WIRT ADAMS, STATE REVENUE AGENT, *v.* JACKSON ELECTRIC RAILWAY, LIGHT AND POWER COMPANY.

1. MUNICIPALITIES. *Constitutional law. Constitution* 1890, *sec.* 183. *Appriation to corporations.*

Under the constitution of 1890, sec. 183, so providing, a municipality cannot make an appropriation of money in aid of a corporation, whether the money belongs to it in its public or private capacity.

2. SAME. *Money. Proceeds of a forfeiture.*

Money accruing to a municipality by a contractor's forfeiture, although it be in the hands of a custodian, cannot be appropriated in aid of a corporation, under the constitution of 1890, sec. 183.

3. SAME. *State revenue agent. Right to sue. Laws* 1894, *p.* 29.

If a municipality wrongfully appropriates money in aid of a corporation, the state revenue agent is empowered (laws 1894, p. 29) to sue for and recover it for the use of the municipality.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

Adams, state revenue agent, appellant, was the plaintiff, and the Jackson Electric Railway, etc., Co., appellee, was defendant in the court below. The facts are these: In 1897 the city of Jackson granted to a company, designated as "The Jackson Railroad & Light Company," of which one McKisson was the moving spirit, certain franchises looking to the construction of an electric light plant and street railroad system in the city, and the parties promoting the enterprise bound themselves to perform certain obligations, and in case of failure, to forfeit to the city $1,500, which was placed in the hands of a custodian—the then mayor of the city—to await results. The city became entitled to the money under the terms of the contract, but allowed it thereafter to remain in the custodian's hands. At this juncture the appellee, the Jackson Electric Railway, Light & Power Company, appeared on the scene, and sought for and obtained from the city practically the same franchises which had been forfeited by the former company and placed itself under substantially the same obligations to the city. The latter company having completed its light and railroad plants, the city authorities, recognizing its claim to be the assignee of the former company, passed an ordinance directing the custodian of the $1,500 to pay it over to appellee, and this was done. The state revenue agent, conceiving that the appropriation to the appellee was unlawful, began this suit for the use of the city, as authorized by laws 1894, p. 29, setting out the facts in his declaration. The defendant, appellee, demurred to the declaration, contending that it did not show a cause of action and that the revenue agent was without authority to sue. The court below sustained the demurrer and dismissed the suit, and the revenue agent appealed to the supreme court.

*Harper & Potter*, for appellant.

Was the appropriation forbidden by the provisions of section 183 of the constitution, and, if so, has the state revenue agent

a right to sue and recover the funds so illegally and unconstitutionally diverted and misappropriated? We concede fully the doctrine established by the case of *Adams* v. *Railroad Co.*, 76 Miss., 714, counted on by appellee, that certain property rights may be acquired and so vested in a county or municipality, when acquired in a private capacity, as that the legislature cannot divest or control the same, in so far as such property rights, like the property rights of private corporations or citizens, are protected by the constitution of the state and of the United States. Subject to such limitations, the overwhelming weight of authority in America is that the state may create, control or destroy these local governmental agencies when and as it sees fit. The extreme doctrine announced by way of dicta in the opinions in the cases of *People* v. *Hurlburt*, 24 Mich., 44, and *Atkins* v. *Randolph*, 31 Vt., 226, have received little or no sanction in the courts of this country. This court distinctly repudiates any such view, and limits the rights of such public corporations against state interference to vested property rights acquired in their private capacity, in the very case relied on by appellee, *Adams* v. *Railroad Co.*, supra.

We are aware that in an early decision in Mississippi, it was held that the provision of a charter, giving a municipality the sole power to grant liquor licenses and to appropriate the money arising therefrom to city purposes, created a vested interest in the funds derived from the exercise of the franchise, which could not be divested so long as the franchise exists, although the legislature has power to destroy the franchise itself. This decision thus undertakes to distinguish between the right of the legislature to deal with the franchise and its right to deal with the funds arising from and out of such franchise. But this distinction is repudiated by all the cases elsewhere, and especially by this court in the case of *State Board* v. *Aberdeen*, 56 Miss., 518. In that case this court distinctly announces the doctrine that the right of the legislature to deal with the funds arising from the exercise of the franchise,

is as broad as its right to deal with the franchise itself, and it was held that the state had plenary power over such liquor license funds, and could divert them to other purposes than those provided in the charter, as it saw fit.   The court in that case uses this language: ''These municipal bodies had no vested right, either to grant licenses, or to money received from them by virtue of their charters of incorporation, which the legislature could not resume.''   It is expressly conceded by counsel in their brief in the case of *Adams* v. *Railroad Co.*, 76 Miss., 717, that the application of the doctrine in that case was error. Then, if the legislature has full authority and power to direct the control of the streets of a city because they are held in trust for all of the people of the state, and not for a locality, it has full power and authority to direct and control the funds derived directly or indirectly from the use, management and authority over such streets.   Hence, it is clear that if such funds be diverted to improper channels, the legislature has full power to appoint an agent to recover such funds and restore them to the public to whom they belong; and this power the legislature has distinctly and fully granted to its revenue agent, in the act heretofore recited.   And this is especially true of the streets of the city of Jackson, since they are held by special and express grant from the legislature, to the state of Mississippi, in trust not alone for the benefit of the people of Jackson, but of all the people of the state, since the land on which the city is built was granted and is held in trust for a capital city for all the people of the state.

But in this case it is a matter of no concern whether the fund in question is held by the city of Jackson in its public or private capacity.   Certain it is that when the money was declared forfeited by the mayor and board of aldermen of the city, and the McKisson concern did not resist but acquiesced therein, it immediately became a fund belonging to the city of Jackson, and should have been promptly paid into the treasury, and the only way that it could have been legally drawn thereafter, was by an act of appropriation.

Now, the state, in pursuance of a broad and comprehensive public policy, has declared in its constitution that no municipality shall make an appropriation to a private corporation or association.   This constitutional provision is not for the benefit of a particular town, but is supposed to be for the benefit of all the people of the state, as well as for a particular class. This provision, too, makes no distinction as to the source from which the funds for such appropriation shall be drawn.   It is intended not alone as a protection to the pockets, but also the morals of the community and the state.   It strikes at the corrupting influences growing out of the habit of public officers granting bounties and favors to special classes.   It is a wise remedial provision, and should not be frittered away by judicial limitations.

We may concede, for the sake of this argument only, that such provision of the constitution was inoperative as to property held in a private capacity by municipalities before its adoption, since their rights had heretofore become vested.   As to municipalities, such as the city of Jackson, which obtained and now operate under a charter granted under and by virtue of the constitution of 1890, and whereby the provision forbidding appropriations to private corporations is thus, in effect, written into the very law of its existence, no such question as to a vested property right can arise as to any property or funds thereafter acquired.

*Williamson, Wells & Croom,* for appellee.

In the case of *Adams* v. *Natchez, etc., R. R. Co.,* 76 Miss., 722, this court used the following language: "If the counties whose rights are involved in this suit hold such rights in a public capacity, or if such rights are affected with a public governmental trust, the legislature may well appoint the agency for the control of such rights and interests; but if the rights and estates of these several counties in the shares of stock of the railroad company, acquired by direct legislative authority, are

interests of a private character, the legislature may not inter-
fere with their management.''

The declaration in this case shows that the fund with which
the city of Jackson was dealing was of a purely private char-
acter, not affected with any public governmental trust.   The
$1,500 which was in the hands of ''a custodian'' of the city,
did not arise from taxation or local assessment, nor did the city
come into its possession by reason of the performance of any
duty imposed upon the municipal authorities by law.   It was
not placed in the hands of the municipal authorities by any cit-
izen or taxpayer of the municipality, but arose from an outside,
independent transaction on the part of the mayor and board of
aldermen, which was not imposed upon them by any legal duty
nor authorized by any statute regulating municipalities.   It
was a fund which had been accumulated by them in the effort
and for the purpose of securing the building of an electric
street railroad in the city of Jackson.   The fund was no more
affected with a public governmental trust than would have been
a private subscription raised for the purpose of securing this
railroad, and placed in the hands of a custodian of the city.

The state revenue agent cannot, by virtue of his office, inter-
fere with any of the local affairs of a municipality.   *People* v.
*Boothe*, 32 N. Y., 397; *People* v. *Ingersol*, 57 N. Y., 1; *Peo-
ple* v. *Fields*, 58 N. Y., 491; *Atkins* v. *Randolph*, 31 Vt., 226;
*Johnson* v. *Hudson*, 96 Tenn., 630; *People* v. *Hurlburt*, 24
Mich., 44; Cooley on Const. Lim., 235 *et seq.*   The action of
the municipal authorities in disposing of a fund which they had
acquired in the manner stated, was not in contravention of sec-
tion 183 of the constitution any more than would have been the
disposition of a fund raised by private subscription and placed
in their hands for the same purpose.

Section 2986 of the chapter on municipalities, code of 1892,
authorizes the mayor, by and with the consent of the board of
aldermen, to annul penalties of all kinds, provided only that
the reasons therefor be entered on the minutes by the clerk,

together with and as a part of the order so doing. The sum, $1,500, was in the hands of the municipal authorities, and the penalty for a failure to build the street railway was the loss of the money deposited. This penalty was annulled by the mayor and board of aldermen, by a resolution duly entered on the minutes by the clerk, and the reasons for the action were duly put of record on the minutes. The fund had been accumulated for the purpose of securing the railway, and it was turned over to the person who had established this great public convenience. There would be no question as to the power of the mayor and board of aldermen to have remitted this penalty and returned the money to the original grantees, who had utterly failed to provide for the public necessity, and it would appear to be absurd to say that they could not remit and pay over the fund to those who had earned it by a strict compliance with the contract entered into by the city, and upon the faith of which the enterprise was established. The city of Jackson is satisfied with the action of its authorities in providing these public conveniences and necessities for its citizens, and the action of the state revenue agent in bringing this suit was entirely unauthorized.

CALHOON, J., delivered the opinion of the court.

From this record and the briefs of counsel on both sides, marked as these briefs are by signal ability, two questions appear :

1. May money, the property of a city, the fruit of a forfeiture by one company of its contract to construct a street railway, etc., be donated by the board of mayor and aldermen to another company, on and after its completion of such work under a contract between it and the city, having no reference to that fund ?

2. May such money be recovered from such company so receiving such donation by the state revenue agent, for the use of such city ?

After the most careful consideration, we answer the first question in the negative and the second in the affirmative.

When the forfeiture occurred the money became the property of the city, although it was in the hands of its custodian. It belonged to the city, arising out of contract with it, because of breach of agreement with it to build the railway, etc., under the general municipal powers conferred by code, §§ 2931–2933.

The deposit of the money was in lieu of bond for performance, and, on the breach, the money became the city's for general purposes, and subject to the legislative power of the municipality, as would any other public fund, occupying the same position when put in the municipal treasury as money had from taxes, sale of licenses, or any other source of public revenue.

Upon its grant of the franchise to build a street railway, etc., the city might require a cash consideration, and this cash would be received in its governmental capacity. To secure performance in the instant case, the city required a cash deposit, and this, on forfeiture, fell under the power and control and disposition of the city, in the exercise of its governmental functions, just as any other matter pertaining to the general welfare of the whole population. The fund came, in fact, out of the exercise by the city of its governmental power over its public streets.

The money, in contemplation of law, was in the city treasury, although in fact in the hands of a depository therefor. The resolution directing its donation to appellee was under, if under anything, code 1892, § 3003, which requires that "all expenditures of money for any purpose whatever, shall be in pursuance of a specific appropriation made by order, and in no other manner."

In the case at bar this was an appropriation of the money of the city to a corporation, and so in direct and palpable violation of section 183 of our constitution. Under this section no

distinction is made between the money of a city in its public or private capacity.   The inhibition is clear, distinct.   Cities are positively forbidden to make appropriation in aid of corporations.   It follows that the appropriation here was void and no title to the money passed to the appellee, and, because the money was the money of the city, a cause of action accrued to the state revenue agent to recover it.   *Adams* v. *Railroad*, 76 Miss., 714.

*Reversed, demurrer overruled and remanded.*