JACKSON ELECTRIC RAILWAY, LIGHT & POWER CO. v. WIRT
ADAMS, STATE REVENUE AGENT.

1. MUNICIPALITIES. *Forfeited fund. Restoration. Donation. Constitution* 1890, *secs.* 100, 183.

   A municipality is without power, under the constitution of 1890, sec. 100, to refund money deposited with it which has been forfeited by the depositor's breach of contract in respect to public work, and is equally without power, under section 183 of the same instrument, to donate the fund to another association which has completed the work.

2. SAME. *Appropriation. Ordinance. Code* 1892, § 3003.

   Funds accruing to a municipality from the forfeiture of a deposit by breach of the depositor's contract, becomes the money of the municipality for general purposes, and, under code 1892, § 3003, can only be expended in pursuance of a specific appropriation made by order of the municipal board.

3. SAME. *Forfeitures in criminal proceedings. Code* 1892, § 2986.

   The authority conferred by code 1892, § 2986, upon municipalities to remit forfeitures, etc., relates only to such forfeitures, etc., as accrue in criminal proceedings.

FROM the circuit court of, first district, Hinds county.

HON. ROBERT POWELL, Judge.

Adams, state revenue agent, appellee, was plaintiff in the court below; the railway, etc., company, appellant, was defendant there. There was a former appeal in this case (78 Miss., 887), when the judgment, sustaining the demurrer of the defendant, the Jackson Electric Railway, Light & Power Company, to the plaintiff's declaration, was reversed and the cause remanded. On the second trial the defendant pleaded the matters of fact shown in the following opinion of the court, and the plaintiff's demurrer to said plea having been sustained, and the defendant declining to plead further, judgment was

rendered in favor of the plaintiff. The defendant thereupon appealed to the supreme court.

*Williamson, Wells & Croom,* for the appellant.

Persons who have in any way advanced money to a corporation under color of the action of the corporate authorities, ought to be considered as creditors of the corporation at least to the extent of being placed in *statu quo* where this is possible. In practical effect, the grantees of the franchises made their deposit of $1,500 as they had agreed to do, and the municipality turned the money over to Howard.

The city of Jackson, by reason of this action upon the part of its municipal authorities, procured from the assignors of the defendant the sum of $1,500 with which to pay C. W. Howard, and this, too, upon the representation, made at the time, that they had in their hands a like sum, which would be held and considered as the money of defendant, and would be repaid upon the completion of their contract. Subsequently defendant complied with all of its contractual obligations, which fact was recognized by the city of Jackson, as appears by this resolution of the mayor and board of aldermen in their record (pp. 21 and 22), and thereupon the mayor and board of aldermen turned over to defendant the said sum of $1,500, as they had agreed to do. By this action they did nothing more than to restore the *statu quo.* They had obtained from defendant the sum of $1,500 under color of their authority as representatives of the city, for which they had paid no consideration, and they returned the money, thus restoring all parties to the same situation as they occupied before the transaction was had.

We take it to be conceded that the state revenue agent cannot maintain this suit except upon a state of facts which would authorize a recovery, if the city of Jackson itself was the plaintiff. If it be conceded that the written contract, which appears in the record as made by the city, was *ultra vires,* the doctrine should not be so applied as to deny justice. To deny

the validity of a contract and refuse to enforce it because of a
lack of authority to make it, is very different from permitting
one of the parties to accept and retain all the benefit of the
transaction, while repudiating the obligation.    Under the facts
of this case it fully appears to the court that, if the defendant
be required to pay the judgment which has been rendered
against it, the city of Jackson will get from defendant the sum
of $1,500 of its money without consideration—a confiscation of
defendant's property as a penalty for his ignorance or mistake
of law.    *Brown* v. *Atchinson*, 39 Kan., 54; *Schiffer* v. *Aurora*,
121 Ind., 154.

By reason of the power conferred by § 2986 of the anno-
tated code, the mayor and board of aldermen had full power to
pay back to Howard the sum which was paid to him, and the
mere incident that this was done in the manner set out in the
plea cannot affect the merits of this case.    It cannot but be
manifest to the court that the judgment in this case, if allowed
to stand, would result in putting into the treasury of the city
$1,500 for which no consideration was ever given; a result
which was never intended or desired by the municipality, and
would be a confiscation of defendant's property on account of
a technical error in making a record of the transaction on the
minutes of the municipal board.    On the other hand, it must
be equally manifest to the court that to reverse the judgment
would result in leaving both parties in *statu quo*, as if no trans-
action had been between them.    The city of Jackson will not
have lost a dollar.    The public improvement sought to be ob-
tained has been secured.    The city has acted in good faith in
endeavoring to restore the *statu quo* of the party performing
the contract.    It is a completed transaction in which right and
justice have been attained, and presents a very different ques-
tion to the one which would be presented if an action had been
brought by either party on the written contract as it appears
on the minutes.    *Hogg* v. *Greenville*, 133 N. Y., 152.

The doctrine of *ultra vires*, which would prevent the enforcement of a contract, if enforcement was sought upon the contract, ought not to be so extended as to serve as an inducement to fraud. When the completed transaction shows that right has prevailed and that no loss has occurred, or can occur, by reason of the completed transaction, the doors of the court ought to be closed upon any effort which smacks of repudiation and bad faith. In the case of *Penly* v. *Auburn*, 85 Me., 278 (21 L. R. A., 657), the plaintiff's assignors had conveyed to the city as a consideration for a contract adjudged void as *ultra vires*. The court says: "The plaintiffs have been guilty of no fraud, and are not in fault. The land was conveyed, therefore, without consideration and should be returned." Citing: 123 Mass., 129; 107 U. S., 348; 118 U. S., 256. As was said in *Brass Foundry & Machine Works* v. *Parke & Co.*, 115 Ind., 236: "When a corporation has received the money or property of an individual, under the color of authority, and has appropriated it to its necessary and beneficial use, it will not be heard to assert its want of power to pay the value of what it has received, and still retains." *Dill* v. *Warehouse*, 7 Mt., 438; *Hitchcock* v. *Galveston*, 96 U. S., 341. The legal principle herein contended for has been recognized and applied by our own court. *Greenville Compress Co.* v. *Planters' Press.*, 70 Miss., 669. See also *Penn. Co.* v. *Railroad Co.*, 118 U. S., 290; *Davis* v. *Railroad Co.*, 131 Mass., 258; *Pearce* v. *Railroad Co.*, 21 How., 441; *In re Cook* v. *Foughal*, L. R. (4 chy.), 748; *Compress Co.* v. *Planters' Press.*, 70 Miss., 669; *City of Natchez* v. *Mallery*, 54 Miss., 499.

The doctrine of implied municipal liability applies to all cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another, by mistake without authority of law, it is her duty to refund it, not from any contract entered into by her on the

subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial.

If the city receives money or property which does not belong to her, it is her duty to restore it to the true owner.   *M. E. Church, South,* v. *Vicksburg,* 50 Miss., 601.

· *Harper & Potter,* for the appellee.

It is manifestly unnecessary and improper for this court to undertake to consider all the preliminary talk that led up to the written agreement, upon which agreement Messrs. Carnes & Corson and the defendant here must stand or fall.   Fortunately this written agreement itself is made a part of the plea and will be found in the record.   Upon it we rest our cause, and insist that it supports and sustains on its face every material allegation of our declaration.

By the very terms of this agreement the $1,500, which Messrs. Carnes & Corson were to receive, was the precise $1,500 which the agreement states had been forfeited to the city by the Jackson Railroad & Light Company, another and distinct company.   So, then, the written contract itself, signed and sealed by Messrs. Carnes & Corson themselves, binds the city to restore, not the $1,500 which they themselves had paid as a forfeit, but another distinct $1,500, which had been forfeited by another and distinct concern.   The agreement on its face also states the fact that the money had been declared forfeited, and had not been transferred as is sought to be alleged in the first part of the plea.

This court need look no further than this agreement of the parties themselves, made a part of the plea, to sustain every material allegation of the declaration, and it is conclusive against the defendant, because it is the only contract under which they claim, if they have any rights at all.

Under this contract no deposit of any sort was required of Carnes & Corson, and if they undertook to make one, it was purely gratuitous.   The city had no right to accept of them a

deposit under the terms of the written contract since none was required.

The Vicksburg case cited by appellant has no application whatever to the case at bar, for they rely entirely upon what they assert to be an express contract, and there is no room or occasion for an implied contract. Section 100 of the constitution of Mississippi expressly covers such an effort to divert the people's money. *Ice Company* v. *Adams*, 75 Miss., 410.

Under this provision of the constitution, the board, acting even in a legal method, could not have permitted this obligation to be remitted, either directly or indirectly, and this act of the board in nowise binds the city of Jackson, and Carnes & Corson are charged with full knowledge of the power of the board in the premises. Manifestly, the whole thing was an effort to secure to Howard his $1,500, and these men, Carnes & Corson, were parties in the effort to enable the board to return money, which they had no authority to do. Surely the court will not apply equitable rules in a court of law for the relief of parties so palpably engaged in circumventing the plain provisions of the constitution.

Appellants, in their brief, thus state their contention: "By reason of the power conferred by § 2986 of the annotated code, the mayor and board of aldermen had full power to pay back to C. W. Howard the sum which was paid to him, and the mere incident that this was done in the manner set out in the plea cannot affect the merits of this case." Now, we submit that § 2986 refers only to criminal liabilities, not civil—fines and forfeitures arising from breaches of the ordinances of the city—and, by its express terms, remittiturs thereunder must be made by ordinance, duly entered on the minutes, and there is no pretense that its terms have been complied with. But, if it does refer to civil liabilities or obligations, then it is plainly and manifestly in direct violation of section 100 of the constitution, and therefore void.

The cases cited by appellants have no application whatever to the case at bar. The city never received a dollar from appellants, and, if appellants paid Howard, it was wholly upon their own responsibility, and they must look to Howard for redress. Nobody had authority to direct them so to do on behalf of the city of Jackson, and the city of Jackson has received nothing from appellants. On the contrary, appellants have received $1,500 of the city's money to which they were not entitled.

Argued orally by *Ben H. Wells*, for appellants, and by *W. R. Harper*, for appellee.

CALHOON, J., delivered the opinion of the court.

The declaration sets up that in July, 1897, the city of Jackson, on a contract with an association of persons, required a deposit of $1,500, to be forfeited to the city in case of failure to build and put in operation an electric light plant and street railroad ; that the forfeiture became complete by a failure; that in August, 1898, the city contracted with appellant, granting it franchises in consideration that it would construct the plants; that in August, 1899, the city passed a resolution accepting the work of the appellant as a compliance with the contract, which resolution ordered the $1,500, in its possession as forfeit from the former contract to be paid over to appellant, which was done, and the action is to recover this money from the city. In this attitude the case was here before on demurrer to the declaration, and we held (78 Miss., 887; 30 So. Rep., 58), that the revenue agent could sue, and that the money was recoverable. On remand of the case to the circuit court, the defendant below, the present appellant, filed a plea setting up the contract between the city and the association, or partnership first above alluded to, the deposit as forfeit, and the forfeiture. It then proceeds to aver that, when the $1,500 deposit was about to be forfeited to the city, one Howard,

representing the former association or partnership, which was styled the "Jackson Railroad & Light Company," was, after the time his firm was to complete the work had passed, by the board of mayor and aldermen, "told" that, "if he would then secure" others to do the work, they would return him the $1,500 so deposited and forfeited, whereupon he induced Carnes & Corson, a partnership under the style of appellant, to undertake it, whereupon he and they had "a conference" with the mayor and board of alderman, who agreed to return to said Howard the $1,500, so forfeited, if Carnes & Corson would build and equip the plants by a time fixed; that the board then granted the same, or nearly the same, franchises as before given to Howard and his associates; and that thereupon Carnes & Corson offered to make the $1,500 deposit, but, upon the suggestion of the mayor in open meeting, that it was useless to take out the Howard $1,500 deposit and put in its place $1,500 of Carnes & Corson, and the direction of the mayor to Carnes & Corson simply to pay the money to Howard, they did so "under the direction of the mayor and board of alderman;" and the plea avers that Carnes & Corson had previously agreed to make this $1,500 deposit. The plea then avers a subsequent written agreement between the city and Carnes & Corson to the effect that, if they would complete and put in successful operation both the railway and the electric lighting plant, the city would turn over to them the $1,500, and that Carnes & Corson did complete the work as per their contract. The circuit court sustained a demurrer to this plea.

It should be noted and borne in mind that there appears nothing in the ordinances or resolutions of the board, or in the written contract between it and Carnes & Corson, all made a part of the plea, by which Carnes & Corson are under any sort of obligation to make any deposit whatever. This cannot be supplied by the averments of a plea at law of contemporaneous or previous parol understandings or agreements. Those who deal with a municipality in matters of the nature shown

in the case at bar, must deal with its board as a board, and can supply no act required to be by ordinance or resolution by agreements with any or all of its component members. He is also conclusively presumed to deal with full knowledge of the constitutional and statutory powers of the body. He acts at his peril if he contracts, even with the board itself in open session, speaking through its minutes, in a matter beyond its powers. This, however, does not conflict with the beneficent rule that, if the municipality gets money or other property pursuant to an *ultra vires* contract, it cannot plead the *ultra vires* and still hold the property. Does this case fall within that category? When Howard and his associates failed to perform their contract, the deposit of $1,500 became the money of the city of Jackson. It could part with it only by specific appropriation made by order of its mayor and board of aldermen. Code 1892, § 3003. Even by such solemn order it could not release it to Howard, or to any assignee of his, because such act is expressly forbidden by sec. 100 of the constitution of 1890. To do this it can find no shelter in code 1892, § 2986, because from the context, collocation and grammatical construction of that section, it plainly has reference only to the remission of fines, forfeitures and penalties pertaining to criminal procedure, and even then such remission cannot be made except "by and with the consent of the board of aldermen." The $1,500 then being the money of the city, which it was powerless to give back to Howard because of sec. 100 of the constitution, it is equally plain it was powerless to give it to Carnes & Corson, because sec. 183 of the constitution expressly forbids it to make any appropriation in aid of their association. We cannot deal with any question of hardship to appellants. Certain it is that the city is minus $1,500, which sum was its own, and, if appellants have it, they should return it, although we sympathize with them in what they may lose.

*Affirmed.*