BRISTER v. LEFLORE COUNTY.

(Division B. Jan. 20, 1930.)

[125 So. 816. No. 28445.]

Gardner, Odom & Gardner, of Greenwood, for appellant.

R. J. Pettey and A. H. Bell, both of Greenwood, for appellee.

Griffith, J., delivered the opinion of the court.

On March 10, 1910, the King's Daughters and Sons Circle of Greenwood was incorporated under chapter 24, Code 1906 (sections 897-938), with all the rights and

powers conferred by that chapter. Among the specified purposes of the corporation was "to build . . . or otherwise acquire, equip and maintain . . . hos-pitals for the treatment and care of the sick, disabled and infirm." In July, 1916, the said King's Daughters and Sons Circle, and the city of Greenwood and the county of Leflore, entered into an agreement for the erection of a hospital in the city of Greenwood, to be called the "King's Daughters Hospital," and for the joint control and management thereof. The hospital was erected, and under the joint control aforesaid has been maintained and operated to the present time. We are not affirmatively informed by this record whether the title to the land and buildings of the said hospital is held solely by the said King's Daughters and Sons Circle, although a fair inference from the facts and recitals of the record is to that effect; and, this being a bond validating proceeding, wherein all things necessary to the validity shall appear, we must assume that the title is held solely by said Circle, else the contrary, if true, would have been shown.

It is the only hospital in the county and the only one within convenient reach of the county. It has now become wholly inadequate to the needs of the increased population, and there is an imperative requirement that additional buildings and facilities be supplied. To this end the city of Greenwood has raised and now has ready for that purpose the sum of thirty thousand dollars; and, acting under chapter 413, Laws 1928, the voters of the county of Leflore have, at an election, almost unanimously authorized the issuance of the bonds of the county in a similar sum for the same purpose.

We are at once confronted with a specific and comprehensive objection urged by a taxpayer of the county that the said chapter 413, Laws 1928, is in violation of section 183, Constitution 1890, and that in consequence the proposed issue of the said thirty thousand dollars of bonds of the county is invalid. And the question has

been raised in such manner that it must be met; the issue is placed squarely before us, and it is the only direct issue in the case.

Section 183 of the Constitution 1890 reads as follows: "No county, city, town or other municipal corporation shall hereafter become a subscriber to the capital stock of any railroad or other corporation or association, or make appropriation, or loan its credit in aid of such corporation or association."

Sections 1, 2, 8, and 9, chapter 413, Laws 1928, are as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi. That the board of supervisors of Leflore county, Mississippi, be and hereby is authorized and empowered in its discretion to appropriate out of the funds of said county an amount not to exceed one hundred thousand dollars, to the King's Daughters and Sons Circle of Greenwood, Leflore county, Mississippi, for the purpose of erecting, constructing and equipping in or near the city of Greenwood, said county and state, a new hospital or hospitals, or for building additions to, or reconstructing and remodeling the present King's Daughters Hospital in Greenwood, Mississippi, or both, to be used for the benefit of the sick and destitute persons of said county.

"Section 2. That to provide funds for said purpose, the board of supervisors of Leflore county, Mississippi, be and is hereby authorized and empowered to issue bonds to an amount not exceeding one hundred thousand dollars, exclusive of all bonds heretofore issued and unaffected by any such previous issue or limitation as to amount of bonds that can be issued by said county, and which bonds shall mature not later than twenty years from their date, and bear interest at a rate not exceeding six per centum per annum, which interest shall be payable semi-annually."

"Section 8. The proceeds arising from the sale and issuance of the bonds to be issued, as provided by this act, shall, in the discretion of the said board of super-

visors, be appropriated to the King's Daughters and Sons Circle, of Greenwood, Leflore county, Mississippi, for the purpose of erecting, constructing and equipping in or near the said city of Greenwood, in said county and state, a new hospital, or hospitals, or reconstructing and remodeling the present King's Daughters Hospital, or both, to be used for the sick and destitute of said county.

"Section 9. The expenditure of said money, when appropriated, shall be under the control of the said board of supervisors, which board of supervisors is hereby empowered and authorized to appoint one or as many as three trustees or agents, in its discretion, to represent said board of supervisors in the proper expenditure of said money for said purposes, in conjunction with the city of Greenwood, Mississippi, and said King's Daughters and Sons Circle, of Greenwood, Leflore county, Mississippi, and in the management of said new hospital or hospitals, when erected."

In Adams v. Jackson Electric Railway, Light & Power Co., 78 Miss. 887, 30 So. 58, it was held by this court that a fund forfeited to a municipality by one company of its contract to construct an electric light plant and street railway could not be donated to another company on the completion of the work, the contract between the latter company and the city having no reference to that fund. The court inter alia said: "In the case at bar this was an appropriation of the money of the city to a corporation, and so in direct and palpable violation of section 183 of our Constitution. Under this section no distinction is made between the money of a city in its public or private capacity. The inhibition is clear, distinct. Cities are positively forbidden to make appropriation in aid of corporations." The same case was again before the court in Jackson Electric Railway, Light & Power Co. v. Adams, 79 Miss. 408, 30 So. 694, and the holding was reaffirmed, although, as is to be noted, the corporation was a public service corporation.

In Turner v. City of Hattiesburg, 98 Miss. 337, 53 So. 681, 683, the court again had under consideration the said section of the Constitution, and it was there held that the act of the legislature, authorizing the city to issue bonds in aid of the Mississippi Normal College, was valid; the court saying that the college "is simply an agency of the state, created by it for the purpose of enabling it to discharge its duty of providing a complete system of schools and colleges." The court cited the case State v. V. & N. R. Co., 51 Miss. 361, wherein, on page 368, our court said: "Neither of these institutions are, in the legal sense, private corporations. They did not have their origin in private or individual endowment, but are sustained by public endowments and appropriations. The title to their property is in the state. They are public corporations, established and endowed by public authority and funds, and are controlled by trustees appointed by the state for limited terms." This quotation perfectly applied to the situation in the Turner Case, and it was, of course, held in that case that section 183 of the Constitution 1890 was not involved.

It appears therefore to be already established by our previous decisions that, if the corporation sought to be aided is a public corporation, there is not the character of corporation dealt with in that section, but, if the corporation is a private corporation, then the inhibition is clear, distinct. The question is therefore: Is the King's Daughters and Sons Circle a private corporation within the meaning of this section?

Dealing with the question whether a hospital corporation is a public or private corporation, the Supreme Court of New York, in Van Campen v. Olean General Hospital, 210 App. Div. 204, 205, N. Y. S. 554, 555, said: "Public corporations are the instrumentalities of the state [or of a subdivision thereof], founded and owned by it in the public interest, supported [in whole or in part] by public funds, and governed by managers deriving their authority from the state [or from a subdivision thereof]." And this is in effect the definition

laid down in State v. V. & N. R. Co., 51 Miss. at page 368, above quoted. "A corporation therefore is not a public corporation merely because it is founded for a public charity. . . . While an institution founded . . . for purposes of general charity such as a hospital for the poor, the sick, the disabled or the insane may well be regarded as a public institution yet in the sense of the law a far more limited, as well as a more exact, meaning is intended by a public institution or corporation." 14 C. J., p. 73; 7 R. C. L., pp. 39, 40. In Detroit Museum of Art v. Engle, 187 Mich. at page 440, 153 N. W. 700, 702, it is tersely and accurately said: "It is of no importance how public the aims and purposes of a corporation may be, unless it takes on the form of a municipal agency, it is still under the ban of the constitutional inhibition." In that case a constitutional provision similiar to our section 183 was involved, and the court went on to say further: "The object and purpose of relator is a public purpose in the sense that it is being conducted for the public benefit, but it is not a public purpose within the meaning of our taxing laws, unless it is managed and controlled by the public." But we need not extend the citation of authorities. They are overwhelming both in number and in force of argument that a corporation such as the King's Daughters and Sons Circle in this case is a private and not a public corporation, and the ultimate test is this: Is its continuity, and its control and management, under the power of the public through public agents who are responsibly accountable to the government?

The record here, and the quoted sections of the legislative act in question, show that the proceeds of the thirty thousand dollars of bonds now being contested are to be appropriated to the said Circle for the purpose of building additions to and remodeling the present King's Daughters Hospital in said city of Greenwood. It is true that the act provides that the expenditure of the money "shall be under the control of the board of supervisors," but when expended it will go into buildings

which, being real estate, will merge into the title now held by the said King's Daughters and Sons Circle; so that, when the money is expended, it will be represented by property the title to which is in the hands of a private corporation, whose stockholders and board of directors, being under no legal control by the state or county, will have the full legal power to sell and convey said property and divert it from the public uses intended. We speak here not as an intimation, but solely of legal power. Such being the case, it is inescapable that there is here contemplated an appropriation to a private corporation in clear violation of section 183 of the Constitution 1890.

Appellee seeks to save the case by resort to section 86 of the Constitution 1890, which is: "It shall be the duty of the legislature to provide by law for the treatment and care of the insane; and the legislature may provide for the care of the indigent sick in the hospitals in the state." In that section is a grant of power; and there is to be applied to it the familiar constitutional principle that, where there is a grant of power in general terms, the grant includes by implication the power to avail of all the necessary and proper means for the accomplishment of the specified object. Upon the principle just stated, there is, however, the limitation of the more potent principle—a principle dominant under our system of government—that the property of one person may not be taken and given over to another as a pure donation or gratuity; and the latter is no more permissible when the taking is under the indirect guise of taxation than it would be by direct force or violence. Under the granted power to avail of proper means and instrumentalities for the "care of the indigent sick in the hospitals in the state," there is no doubt that the legislature may authorize a county or a municipality (Feemster v. Tupelo, 121 Miss. 733, 83 So. 804) to acquire and to operate a public hospital under the control of the public authorities. But it is equally clear that under that

power the legislature may not authorize a county or municipality through taxation to acquire a hospital and thereupon forthwith to make a simple gift or donation of it to a private person or corporation without reservation of the control and dominion over the property thus given, or the legal equivalent thereof.

Applying these principles to the case at bar, wherein it is proposed to appropriate the proceeds of thirty thousand dollars in bonds to buildings and additions on the property of a private owner, over which owner so far as the ultimate disposition of that property is concerned, the public will have no legal control, either in time or in title, it is at once seen that the presence of section 86 in the equation has not advanced the case a single step, upon the record as it now stands.

There is in the record, however, the written agreement or joint resolution, as we have already mentioned, executed by the King's Daughters and Sons Circle, and by the city of Greenwood and by Leflore county, and spread on the official minutes of the parties, providing for the joint control, management, and maintenance of said hospital; the said control and management being thereby vested in a board of control of three members, one member to be appointed by and to be responsible to each of the said principal parties. The terms of said chapter 413, Laws 1928, apparently were employed with this agreement in view.

Inasmuch as a county may be authorized by law to acquire and operate a public hospital, and a municipality may also be so authorized, there would seem to be no insurmountable legal obstacle in the way of their doing so jointly. No legal reason or authority to the contrary has been pointed out or cited to us, and on our own part we have not been able to find any rule or decision that would forbid such an arrangement. Such being the case, we may go further and say that there is no legal reason why a county, a municipality, and a private person or corporation may not, on a joint three-party arrange-

ment, do the same work, provided of course the arrangement be such that the majority control shall remain in the public through responsible public agents or managers, or else the services to be rendered be covered by an obligatory contract of such specific provisions that the same may be enforced in a court of competent jurisdiction by the public authorities; it being kept in mind that, in the execution of a contract of this nature, there must be such a just and reasonable relation between the services to be rendered and the payments made thereunder as to avoid the issue that a part of the payments made or to be made out of public funds are in fact only a donation or gratuity.

So much has been said about the joint agreement between the three parties interested in this hospital in order, first, to lay a proper predicate for pointing out, as we now do, that the said agreement is wholly silent as to the title to said property, and fails to adequately cover the point, chiefly concerned in this opinion, respecting the legal power of the private corporation, in which the whole title to the property rests, in the matter of the disposition of that title without the consent of the public authorities; and, second, since for the reason mentioned the decree must be reversed, that the parties may, if so desired, reconsider the said agreement, as well as the matter of title, and may legally and equitably so readjust these several features as they may be advised is necessary and proper, to meet the constitutional objections and requirements pointed out herein. All these matters, when reformed and readjusted and made a matter of record on the proper minutes and on the records of land titles, may thereupon, by a supplement to this court record, again be brought before the chancellor for his adjudication on the facts and the law. While not now going further in matter of decision than as concerns the bonds for additions to the real property, and deciding nothing in the matter of operation and maintenance, as the latter points are not now directly

before us, and while not committing ourselves as to how far along the lines indicated in the authorities now to be cited, we would hereafter hold it to be necessary for a record to show, we would venture in the public interest to suggest that, in any readjustments made to accomplish the purpose desired by the county and city, careful consideration be given to the following authorities: 1 Hare's American Constitutional Law, pp. 280, 284; Cooley's Constitutional Limitations (7 Ed.), p. 698; Detroit Museum of Art v. Engel, 187 Mich. 432, 153 N. W. 700; State v. City of St. Louis, 216 Mo. 47, 115 S. W. 534; St. Mary's School v. Brown, 45 Md. 310; Curtis v. Whipple, 24 Wis. 350, 1 Am. Rep. 187, and Miller v. Tucker, 142 Miss. 146, 105 So. at pages 780, 781—particularly the latter case, as reported in the Southern Reporter.

Reversed and remanded.