# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00152-SCT

*GROUNDWORX, LLC*

*v.*

*THOMAS A. BLANTON AND CITY OF HATTIESBURG, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/07/2015 |
| TRIAL JUDGE: | HON. M. RONALD DOLEAC |
| TRIAL COURT ATTORNEYS: | JOSEPH ANTHONY SCLAFANI |
| | R. ANDREW TAGGART |
| | MONA PATEL GRAHAM |
| | DAVID GLYN PORTER |
| | LAWRENCE ELVIN ALLISON |
| | JOHN EDWARD MILNER |
| | CHARLES E. LAWRENCE, JR. |
| | MICHAEL ADELMAN |
| | ANNIE L. AMOS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | R. ANDREW TAGGART, JR. |
| | MONA PATEL GRAHAM |
| | DAVID GLYN PORTER |
| ATTORNEYS FOR APPELLEES: | MICHAEL ADELMAN |
| | J. COLLINS WOHNER, JR. |
| | KEITH W. TURNER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 07/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Groundworx, LLC, appeals the judgment dismissing Groundworx's breach-of-contract action against the City of Hattiesburg. We review this judgment de novo, employing the same standard as the trial court. Taking Groundworx's allegations as true, we will affirm dismissal only if it appears beyond doubt that Groundworx will be unable to prove any set of facts to support its claim.

¶2. After reviewing the contract between Groundworx and the City, which Groundworx attached to its complaint, we are left with no doubt that Groundworx's complaint was properly dismissed for failure to state a claim. Even when we take all of Groundworx's allegations as true, Groundworx can cite no contractual provision the City allegedly breached. Even if Groundworx expended millions of dollars preparing to perform under the contract, it did so before securing the necessary financing to complete the project. And unfortunately for Groundworx, the contract was clear—if Groundworx did not secure financing by a certain date, the City had the right to terminate the contract. So Groundworx can prove no set of facts to show the City breached the contract.

¶3. Nor can Groundworx prove the City was liable under a theory of promissory estoppel. Groundworx claims to have reasonably relied on actions and assurances made by City officials. But under Mississippi law, the City can be liable only for actions entered on its minutes and approved by its mayor. So as a matter of law, Groundworx cannot recover based on unofficial City promises.

¶4. We therefore affirm the judgment dismissing Groundworx's complaint.

## Background Facts[1] and Procedural History

### I.        City-Groundworx Contract

¶5.       In 2010, the City's wastewater system was discovered to be noncompliant with federal pollution laws.  Under order to remedy the problem, the City sought proposals for a land-application treatment system for sewage and wastewater.  On November 11, 2013, Groundworx responded with a proposal to construct, operate, and maintain a land-application system.

¶6.       After negotiations, the City and Groundworx executed a contract on January 21 and 27, 2014.  Under the contract, Groundworx agreed to "design, build, construct, own, operate and maintain the System for the purpose of collecting, treating, storing, transporting, and disposal of the City's Wastewater . . . ."  In exchange, the "City unconditionally and irrevocably covenant[ed] and agree[d] to pay to Groundworx . . . the interest portion of Groundworx's Debt Service payments"—along with other significant payments.[2]

---

[1] Because, as part of our standard of review, we must take the allegations in the plaintiff's complaint as true, this opinion presents the facts as Groundworx alleged them. *See* ***Booneville Collision Repair, Inc. v. City of Booneville***, 152 So. 3d 265, 269 (Miss. 2014) (citation omitted).

[2] In its entirety, Section 4.1.1 of the contract provided:

City unconditionally and irrevocably covenants and agrees to pay to Groundworx:

(i) beginning on the Effective Date, the interest portion of Groundworx's Debt Service payments, with the same to be billed and paid in a manner to ensure that Groundworx receives the payments at least fifteen (15) days prior to the due date for the Debt Service payment;

(ii) beginning on the date the work required by Exhibit 2.2.4.2 is complete and

3

## II.    Groundworx's Attempted Financing

¶7.    While the City agreed to make payments sufficient to service the debt, it was Groundworx that had to obtain the $147 million to finance the project. And the contract contained a termination provision. It expressly provided, "[i]n the event that Groundworx has not closed its financing for the acquisition and construction of the System by June 2, 2014, either party shall have the right to terminate this Agreement by written notice to the other delivered on or after June 2, 2014, and before the date such financing is closed."

¶8.    Before the contract was entered, the City's mayor sent a letter to the Mississippi Business Finance Corporation (MBFC) in December 2013. This letter explained the City was negotiating with Groundworx "for this public/private project" and encouraged "MBFC to induce the bonds for Groundworx financing." City representatives also participated in a written presentation to potential bond insurance agencies in New York City. And the day after the contract was executed, City representatives traveled to New York to participate in the meeting between Groundworx and Stephens, Inc.—Groundworx's would-be financier.

---

subject to Section 2.2.7, and continuing until the payments provided for by the following sentence commence, the amount set forth in Exhibit 4.1.1 which may be adjusted based upon changed requirements of the City, and additional requirements which may be imposed by the Commission or the EPA and Groundworx's Debt Service payments, with the same to be billed and paid in a manner to ensure that Groundworx receives the payments at least fifteen (15) days prior to the due date for the Debt Service payment; and

(iii) during each Fiscal Year or part thereof during the Term from any monies legally available for such purpose to the City, at the time and in the manner hereinafter provided, commencing with the Accounting Effective Date of this Agreement, the Total Annual Requirement for such Fiscal Year.

4

¶9. According to Groundworx, "[i]t was clear to the parties that neither the bond rating agencies nor the bond insurers would be interested in bonding the financing . . . but for the City's promise to increase sewer rates to pay for the financing." So at the meeting, the City officials talked about raising sewer rates to show "the City's commitment to bond financing the project."

¶10. Two and a half weeks later, during its February 18, 2014 meeting, the city council adopted a resolution to raise sewer rates. But nine days later, the mayor vetoed the resolution. So sewer rates were never raised.

¶11. The June 2, 2014 financing deadline passed without Groundworx having closed on its financing.

### III. Groundworx's Original Complaint

¶12. Two weeks after the financing deadline, on June 19, 2014, Groundworx sued the City. It argued the City had breached its duty to maintain a revenue stream 1.3 times the amount of Groundworx's anticipated debt-service payments. Groundworx demanded specific performance—that the City be required to comply immediately with the obligation to identify a sufficient revenue stream. If not, Groundworx alleged it would not be able to secure financing for the project. Groundworx also requested more than $6 million in compensatory damages.

¶13. Groundworx also filed for a temporary restraining order (TRO) prohibiting the City from cancelling the contract. The TRO was denied on July 14, 2014.

¶14. The City filed its answer on July 18, 2014. Along with its answer, the City filed a countercomplaint for declaratory relief. The City asked the chancellor to declare: (1) the City had no contractual duty to identify a source of revenue, but rather only a duty to make payments when due; (2) therefore, the City had not yet breached any contractual obligation; and (3) the City had the unilateral right to cancel the contract based on Groundworx's failure to obtain financing.

¶15. The City did not wait for a declarative judgment to cancel the contract. Instead, on August 5, 2014, the City exercised its contractual right to walk away from the agreement.

### IV. Groundworx's Amended Complaint

¶16. With the contract now terminated, Groundworx moved for and was granted permission to file an amended complaint. The amended complaint brought two counts against the City.

¶17. Count I alleged breach of contract, premised on two theories. First, Groundworx alleged the contract itself obligated the City to raise revenue to cover 1.3 times the amount of the debt service payments. And second, *after* the contract was executed, the City entered an "express agreement" to raise sewer rates so Groundworx could obtain financing.

¶18. Count II alleged promissory estoppel. Groundworx claimed the City representatives assured Groundworx and Stephens the City would raise sewer rates, knowing Groundworx would be unable to obtain financing if the City did not. Groundworx claimed it detrimentally relied on these assurances to incur significant expenses on the project. Groundworx

6

requested the chancellor award at least $6,266,753.42 in damages—the amount Groundworx had spent on the now-failed project.

¶19.    On October 28, 2014, the City responded to Groundworx's amended complaint with a Rule 12(b)(6) motion to dismiss. *See* M.R.C.P. 12(b)(6). The City asserted there were no relevant facts in dispute and Groundworx's two claims failed as a matter of law. According to the City, the fully integrated contract with Groundworx contained no agreement that the City would raise sewer rates or otherwise identify a revenue stream. So Count I failed to state a claim, as it was not based on the contract. Additionally, the City argued any promise by a governmental body made without proper authorization is *ultra vires* and cannot be enforced through the doctrine of estoppel. Thus, Count II also failed to state a claim, as Groundworx could not recover based on unauthorized oral promises by City officials.

## V.    Blanton's Intervention

¶20.    Between the filing of Groundworx's original complaint and amended complaint, Hattiesburg taxpayer and property owner Thomas Blanton moved for and was granted the right to intervene under Rule 24.[3] *See* M.R.C.P. 24(a)(2). Blanton immediately filed a cross-complaint against Groundworx, seeking a declaratory judgment that the City's contract with Groundworx was void *ab initio*.

---

[3] Blanton argued he had a right to intervene because he had an interest in the litigation. This stated interest was his status as one of the taxpayers required to finance the project and, after the project was cancelled, possibly pay a multimillion-dollar judgment in favor of Groundworx. Blanton further asserted his interest was not adequately represented by the City, which acted unconstitutionally when it entered into the contract with Groundworx.

¶21.  Blanton advanced this same argument in his own motion to dismiss Groundworx's amended complaint. According to Blanton, the financing scheme contemplated by the contract violated Section 183 of the Mississippi Constitution. Among other things, this section prohibits a city from "loan[ing] its credit in aid of [a private] corporation or association." Miss. Const. art. 7, § 183. So the contractual obligation to service the debt on a wastewater treatment facility that was to be solely owned and operated by Groundworx, a private company, was constitutionally prohibited. Thus, he argued the amended complaint failed to state a claim because it was based on a contract that violated the Mississippi Constitution, as well as the federal Due Process Clause. *See* U.S. Const. amend XIV.

¶22.  Groundworx responded by filing a motion to dismiss Blanton's cross-complaint. Groundworx argued Blanton's cross-complaint should be dismissed for the same reasons his motion to intervene should have been dismissed: (1) Blanton lacked standing to bring a cross-complaint; and (2) Blanton's exclusive remedy to challenge the constitutionality of the City-Groundworx contract was to timely file a bill of exceptions under Section 11-51-75, which Blanton failed to do.

### VI.  Judgment Dismissing All Claims

¶23.  On December 2, 2014, the chancellor heard all three pending motions to dismiss—the City's, Blanton's, and Groundworx's. At this hearing, the City disagreed with Blanton that any express provision in the now-terminated contract violated Section 183. But the City suggested that if the chancellor found the City was somehow extracontractually obligated to raise sewer rates so Groundworx could obtain financing, then that particular action *would*

8

violate Section 183. The City also asserted the contract-based reasons for dismissal argued in its motion to dismiss.

¶24. Following the hearing, the chancellor issued a written ruling dismissing Groundworx's amended complaint with prejudice. The chancellor agreed with Blanton that the City-Groundworx contract violated Section 183. The chancellor was persuaded by *Brister v. LeFlore County*, 156 Miss. 240, 125 So. 816 (1930). According to *Brister*, for a city to avoid violating Section 183's prohibition against lending its credit to a private company, a city must maintain some element of ownership and control over the project. *Id.* at 249, 125 So. at 818. But the contract with Groundworx placed all ownership and control over the project with Groundworx, while obligating the City to pay for it. Moreover, according to the pleadings, Groundworx could not secure financing for the project without the City raising its sewer rates, an action the mayor vetoed. The chancellor felt "[s]uch an entanglement and conflict between the City and Groundworx" was likely "contemplated in the drafting of Article VII, Section 183 of the Mississippi Constitution and the prohibitions contained therein, and the due process considerations that necessarily attach thereto." Consequently, the chancellor found the City-Groundworx contract was void *ab initio*. Because "the Constitutional issue [was] dispositive," the chancellor found "no further issues need be addressed."

¶25. On January 7, 2014, the chancellor entered a final judgment. This judgment granted Blanton's motion and dismissed Groundworx's amended complaint with prejudice. Because all of Groundworx's claims against the City had been dismissed, the chancellor deemed the

9

City's motion to dismiss moot. He also deemed Groundworx's motion to dismiss Blanton's cross-complaint moot. With all claims among the parties fully adjudicated, the judgment became final and appealable.

¶26. Groundworx timely appealed.

**Analysis**

¶27. We review the grant of a motion to dismiss de novo. ***Booneville Collision Repair, Inc. v. City of Booneville***, 152 So. 3d 265, 269 (Miss. 2014). "We take the allegations in the plaintiff's complaint as true, and the motion should be denied 'unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.'" ***Id.*** (quoting ***Scaggs v. GPCH-GP, Inc.***, 931 So. 2d 1274, 1275 (Miss. 2006)).

¶28. Taking Groundworx's allegations in the amended complaint as true, our de novo review leads to the same conclusion as the chancellor's—Groundworx's amended complaint fails to state any claim against the City for which relief may be granted. Though the chancellor followed Blanton's constitutional route to reach dismissal, courts should avoid declaring unconstitutional a legislative act unless compelled to do so. *See W. Line Consol. Sch. Dist. v. Greenville Mun. Separate Sch. Dist.*, 433 So. 2d 954, 958 (Miss. 1983). And here, there is a separate and distinct reason Groundworx's amended complaint must be dismissed. So we need not address whether the contract violated Section 183. Instead, we affirm for the contract-based reasons cited in the City's motion to dismiss.

¶29. In its amended complaint, Groundworx brought two claims against the City—breach of contract and promissory estoppel. But comparing the complaint with the contract, none

10

of the alleged failures by the City, even if proven true, constitute a breach of a contractually imposed duty.

¶30.    According to the amended complaint, the City had a contractual duty to identify a revenue stream 1.3 times the amount of the debt-service payments. But there is no language in the fully integrated contract that supports such an obligation. Instead, the contract was clear and unambiguous—the City's obligations did not begin until Groundworx secured financing and had to start servicing its debt. And if Groundworx failed to secure financing, the contract authorized the City to cancel the project without owing anything. Thus, Groundworx has no claim for breach of contract for failure to identify a revenue stream.

¶31.    The amended complaint also alleged the City breached an "express agreement" to raise sewer rates. According to the complaint, this agreement was not part of the fully integrated contract. Instead, this side deal was struck *after* the contract was executed. But the only way the City could enter a binding contract to raise sewer rates is "by a valid order duly entered upon its minutes." *Colle Towing Co. v. Harrison Cty.*, 213 Miss. 442, 448-49, 57 So. 2d 171, 172 (1952) (citations omitted); *see also* *Nichols v. Patterson*, 678 So. 2d 673, 676 (Miss. 1996) (holding city councils can bind their cities "only when acting within their authority and in the mode and manner by which this authority is to be exercised under the statutes, and that their contracts, and every other substantial action taken by them must be evidenced by entries on their minutes, and can be evidenced in no other way"). And here, Groundworx does not allege the agreement to raise sewer rates is evidenced on the minutes. Rather, it alleges the opposite—an order to raise rates was never entered because the mayor

11

vetoed the city council's decision. So Groundworx has no triable breach-of-contract claim based on the City's alleged failure to raise sewer rates.

¶32. For the same reason, Groundworx has no estoppel claim based on the unfulfilled promise to raise rates. As a matter of law, "there is no estoppel against a [city]." *Colle Towing Co.*, 213 Miss. at 448, 57 So. 2d at 172. The law that City representatives "can contract and render the [City] liable only by a valid order duly entered upon its minutes" is so clear and consistent that "all persons dealing with [the City]"—including Groundworx—"are chargeable with knowledge of this law[.]" *Id.*; *see also* ***Butler v. Bd. of Supervisors for Hinds Cty.***, 659 So. 2d 578, 582 (Miss. 1995). For purposes of our review, we take as true Groundworx's allegation that individual city representatives promised to raise sewer rates so Groundworx could obtain financing. However, as a matter of law, this promise cannot reasonably be relied upon or enforced by Groundworx unless it is on the City's minutes. Thus, Groundworx has no estoppel claim.

¶33. Groundworx has suggested these contract-based reasons to affirm dismissal are outside the scope of this appeal. As Groundworx frames it, we must decide solely about Blanton—his intervention and constitutional argument. But Blanton is not the only appellee—the City is too.[4] The final judgment did not merely resolve a dispute between

---

[4] On appeal, the City seeks no relief different from what the chancellor granted. Instead, it asks us to affirm the chancellor's final judgment. Thus, we reject Groundworx's contention the City had to file a cross-appeal in order to reassert its nonconstitutional arguments for dismissal. *See* ***Brown v. Yates***, 68 So. 3d 758, 762 (Miss. Ct. App. 2011) (holding that an appellee must file a cross-appeal "in order for the appellee *to gain reversal* of any part of the decision of a trial court about which the appellant brings no complaint") (emphasis added).

Blanton and Groundworx. It adjudicated the claims Groundworx brought against the City, finding the amended complaint against the City failed on its face as a matter of law. And as an appellee, the City "is entitled to argue and rely upon any ground sufficient to sustain the judgment below." *Kirksey v. Dye*, 564 So. 2d 1333, 1337 (Miss. 1990).

¶34. Admittedly, Groundworx raises interesting questions about intervenor standing, the application of Section 11-51-75, and the scope of Section 183's prohibition.[5] But even if we answered these questions in Groundworx's favor, it would not obtain the relief it seeks—reversal of the judgment of dismissal *in favor of the City* and remand of its claims against the City to chancery court.

### Conclusion

¶35. Unfortunately for Groundworx, even accepting its allegations are true, it simply has no legal avenue to recover its investment in the project before financing fell through and the contract was terminated. We therefore affirm the judgment dismissing Groundworx's claims.

¶36. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN AND CHAMBERLIN, JJ., CONCUR. BEAM, J., NOT PARTICIPATING.**

---

[5] Specifically, Groundworx's four appellate issues are: (1) the chancellor failed to recognize Blanton lacked standing to intervene; (2) the chancellor failed to recognize the procedures of Section 11-51-75—which Blanton did not follow—provided Blanton the exclusive remedy to challenge the constitutionality of the contract; (3) the chancellor erred in ruling the City-Groundworx contract was unconstitutional; and (4) the chancellor erred in not granting Groundworx's motion to dismiss Blanton's cross-complaint.