*998 OPINION OF THE COURT
Nicholas Colabella, J.
In a hybrid proceeding pursuant to CPLR article 78 and action for declaratory judgment, petitioner seeks (1) to annul a determination by respondent Zoning Board of Appeals denying use and area variances, (2) to have declared unconstitutional certain provisions of section 267-2 of the City of Mt. Vernon Zoning Ordinance, and (3) to be awarded damages and counsel fees pursuant to 42 USC § 1983.
The controversy arises in connection with a plan by petitioner, a not-for-profit corporation, to build a congregate housing facility for the elderly, consisting of two units in a two-family house. Each unit would be occupied by six unrelated elderly Mt. Vernon residents.
The Genesis project is a response to what Mt. Vernon City Mayor Ronald Blackwood described in 1987 as the urgent need for affordable housing for the elderly. Genesis acquired the property on which the facility would be built at cost from a not-for-profit organization, Affordable Housing, Inc. The facility itself is to be paid for by a development grant from New York State under the Housing Opportunities for the Elderly Program (HOPE). The HOPE project seeks "to assist the efforts of eligible not-for-profit organizations and municipalities in the construction and rehabilitation of shared housing development projects for low income elderly persons to foster the most effective use of public and private resources by providing grants or loans for the costs of such projects and to promote new living arrangements for elderly persons as well as to improve the physical condition of neighborhoods and rural areas.”
The subject property is presently a vacant lot in a blighted neighborhood.
The application for a building permit was denied initially by the Building Department on the basis that the proposed use would be a "boarding house”, a prohibited use under the Mt. Vernon Zoning Ordinance. Also the planned construction violated certain setback requirements. On appeal to the Zoning Board of Appeals, petitioner argued that the Building Department erred in its classification of the use because the facility would be used by a functionally equivalent family, and a two-family house was permitted as of right in the residential zone in which the property was located. In the alternative, if the Zoning Board disagreed, petitioner requested a use vari *999 anee. Petitioner also sought area variances on the basis that the proposed deviation from the Zoning Ordinance was not severe and would be consistent with the surrounding neighborhood.
On December 10, 1990, the Zoning Board affirmed the decision of the Building Inspector, finding that the proposed use constituted a boarding house. It denied the application for variances because it found petitioner had failed to demonstrate sufficient hardship for use and area variances.
Petitioner then commenced this proceeding arguing that the Zoning Ordinance’s definitions of "boarding house” and "family” were unconstitutional on their face and as applied to petitioner. At the time of the Zoning Board decision, section 267-2 of the Zoning Ordinance defined the terms "boarding house” and "family” as follows:
" 'Boarding House’ — a building other than a hotel in which accommodations are offered for fire [sic] and/or hired out for the lodging of four (4) or more persons either individually or as families, with separate cooking facilities or with central kitchen or dining room for the preparation and service of meals to said persons.
" 'Family’ — One (1) or more persons related by blood, marriage or legal adoption who live together in one (1) dwelling unit and maintain a common household.”
The definition of "family” was subsequently amended on April 24, 1991.[1] The new definition defined "family” as: "One (1) or more persons having a common domestic bond who live together in one (1) dwelling unit as a traditional family or its functional equivalent, headed by one (1) or more resident persons who have authority over the care, functioning or management of their common household.”
Petitioner maintains that the definition of "boarding house” and the amended definition of "family” are vague and that the vagueness of the definition enables the municipality to discriminate against nontraditional families by classifying their living arrangements as a boarding house use when politically expedient to do so. It also argues that the definition of the term "boarding house” is overbroad.
Respondents counter that petitioner has failed to prove the Zoning Ordinance’s definitions are unconstitutional. They *1000 maintain that the current definitions of "boarding house” and "family” contain clear and easily Understood elements, that the record supports the finding that the proposed use constitutes a boarding house as defined, and that the proposed use fails to meet the criteria under the amended definition of "family” inasmuch as functionally equivalent families are limited to licensed, supervised group homes.
Petitioner also seeks to overturn the denial of area variances. Respondents have acceded to this relief in order to limit the issues before the court.
i
Zoning ordinances like other legislative enactments are presumed to be constitutional and the burden is on the party challenging the ordinance to prove its unconstitutionality beyond a reasonable doubt (Asian Ams. for Equality v Koch, 72 NY2d 121). In order for a zoning ordinance to be a valid exercise of the police power it must survive a two-part test: (1) it must have been enacted in furtherance of a legitimate governmental purpose, and (2) there must be a reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end. If the ordinance fails either part of this test, it is unreasonable and constitutes a deprivation of property without due process of law under our State Constitution (McMinn v Town of Oyster Bay, 66 NY2d 544, 549).
The first prong of this test is not in dispute in this case. It is well established that zoning may be used to limit the use of certain neighborhoods to single-family residences (Group House v Board of Zoning & Appeals, 45 NY2d 266, 271). In Village of Belle Terre v Boraas (416 US 1, 9), the Supreme Court observed that "[a] quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one * * * The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of seclusion and clean air make the area a sanctuary for people.”
Toward these ends, uses which conflict with a stable, uncongested single-family environment may be restricted. Uses that may be legitimately regulated include those involving high density and occupancy by transients. By requiring single- *1001 family use of a house, the ordinance emphasizes and ensures the character of the- neighborhood to promote the family environment (City of White Plains v Ferraioli, 34 NY2d 300, 305).
The definition of the term "family” in the context of zoning has been evolving. Originally the term referred to the physical structure of a dwelling to distinguish that type of building from apartment houses or other multiple dwellings; it was not intended to regulate the composition of a household (McMinn v Town of Oyster Bay, 105 AD2d 46, 52). Application of the term "family” expanded as municipalities began to define the term "on the basis of the relationships between members of the unit, numbers of its members, its permanence, or in terms of maintenance of a common household or common use of the kitchen * * * Broader definitions have included unrelated individuals functioning as a single housekeeping unit while narrower ones have limited the use to those related by blood, marriage or adoption” (supra, at 52-53). The attempts to restrict the composition of the family implicate the second prong of the standard for constitutional analysis, discussed above, namely, whether an ordinance’s definition of family is reasonably related to the achievement of legitimate goals.
Definitions of family that limit relationships in the family to those of blood or adoption have been found to be overly restrictive (see, City of White Plains v Ferraioli, supra, at 305). "Zoning is intended to control types of housing and living and not the genetic or internal family relations of human beings” (supra, at 305). "[Restricting occupancy of single-family housing based generally on the biological or legal relationships between its inhabitants bears no reasonable relationship to the goals of reducing parking and traffic problems, controlling population density and preventing noise and disturbance” (McMinn v Town of Oyster Bay, supra, 66 NY2d, at 549).
Zoning ordinances may define the term "family” alternatively to "include various circumstances and relationships * * * but only so long as the ordinance, when read in its entirety, does not exclude any households that due process requires * * * Thus * * * [a] provision, which defines family '[by reference to] blood, marriage, or * * * adoption’ is not per se unconstitutional provided the ordinance contains an alternative definition of family as any number of unrelated persons living together who meet the indicia of a functional equivalent of a traditional family” (McMinn v Town of Oyster Bay, supra, 66 NY2d, at 550).
*1002 What constitutes a functionally equivalent family? In City of White Plains (supra), the city argued that a group home consisting of a married couple living with two of their own children and 10 foster children was not a family, but either a philanthropic institution, allowed only by a special permit, or a boarding house wholly excluded from a single-family residential zone. The court disagreed.
It stated that
"[t]he children, natural and foster, live together as if they were brother and sisters and the Seards were their common parents. The household is maintained as a family would be in a single housekeeping unit with kitchen facilities * * *
"It is significant that the group home is structured as a single housekeeping unit and is, to all outward appearances, a relatively normal, stable, and permanent family unit” (City of White Plains v Ferraioli, 34 NY2d, supra, at 304).
The court held that "[s]o long as the group home bears the generic character of a family unit as a relatively permanent household, and is not a framework for transients or transient living, it conforms to the purpose of the ordinance” (supra, at 305-306). The minimal arrangement to meet the test of a zoning provision in that case was stated to be "a group headed by a householder caring for a reasonable number of children as one would be likely to find in a biologically unitary family” (supra, at 306).
The concept of family was extended in Group House v Board of Zoning & Appeals (45 NY2d 266, supra). Group House involved a home for foster children which was to be operated by surrogate parents, not necessarily related to each other, and the children would not necessarily stay for extended periods of time. The court held that the proposed group home would nonetheless constitute a functionally equivalent family because it was designed "to create a stable, family type environment for children whose natural families unfortunately cannot provide such a home” (supra, at 273). Whether a particular "group home” constitutes a functional equivalent of a family is essentially a factual question (supra, at 274).
A study in contrast, Crane Neck Assn. v New York City/ Long Is. County Servs. Group (61 NY2d 154, 160) found a proposed group home was not a functional equivalent of a family because of its fundamentally institutional character. It stated: "[A] home inhabited by eight unrelated adults each receiving uninterrupted professional supervision and care is *1003 not a single-family unit. The residents are twice outnumbered by a changing, nonresident staff of nurses, physical and recreational therapists, dieticians and others finding no equivalent in a biologically unitary family, or indeed in any expanded concept of the word 'family.’ While neither the size of the resident group nor the nature of its daily activities would necessarily determine the issue * * * the absence of regular houseparents and most significantly, the presence of a large complement of nonresident professional attendants distinguish the residence at 3 Johns Hollow Road from a single-family unit.”
In McMinn (supra), the Court of Appeals shifted its analysis from the application of an ordinance to a specific household to examine the facial validity of an ordinance that defined a surrogate family with greater restriction than a traditional family by limiting the number and ages of unrelated persons that could live together. The court held the distinction in treatment violated the State constitutional guarantee that no person shall be deprived of property without due process of law and declared the ordinance unconstitutional. In so holding, the court never reached the issue of whether the ordinance may have been constitutional as applied to the particular living arrangement involved in that case which Judge Kaye in her concurring opinion described as having " 'the look of a rooming house operation’ ” (66 NY2d, supra, at 552).
The court applied the same analysis in Baer v Town of Brookhaven (73 NY2d 942). The ordinance in that case defined "family” as persons " 'living and cooking together as a single housekeeping unit’ ” without limiting the number of persons related by blood, adoption or marriage, but restricting the number of unrelated persons to no more than four (at 943). Again without addressing particular living arrangements, the court held that the ordinance was facially invalid because the greater restriction of unrelated persons violated the State Constitution.
With this background, the court now turns to the question of whether the definitions of "boarding house” and "family” in this case are in violation of the State Due Process Clause (NY Const, art I, § 6).
ii
As defined, the term "boarding house” has six elements: (1) There must be a building; (2) which is not a hotel; (3) which *1004 offers accommodations; (4) for hire or hired out; (5) to four or more persons, individuals or as families; and (6) which either provides separate cooking facilities or a central kitchen or dining room.
By its terms, the foregoing literally includes even traditional families in a house or apartment unit rented in the City of Mt. Vernon that contains a mother, father and two children. Such a house or apartment would: (1) exist in a building; (2) which is not a hotel; (3) which is offering accommodations; (4) for hire; (5) to four or more persons; and (6) provide separate cooking facilities or a central kitchen or dining room.
Such a broad definition is overinclusive because it simultaneously prohibits what is expressly allowed under the Zoning Ordinance (McMinn v Town of Oyster Bay, supra, 66 NY2d, at 549), and it is vague to the extent it lacks clear criteria by which to distinguish a "boarding house” from a "family” use, thereby inviting arbitrary application. The definition, therefore, lacks a rational relationship to legitimate goals, and is facially invalid (McMinn v Town of Oyster Bay, supra, 66 NY2d, at 550). .
in
The amended definition of "family” has six elements: (1) one or more persons; (2) having a common domestic bond; (3) who live together; (4) in one dwelling unit; (5) as a traditional family or its functional equivalent; and (6) headed by one or more resident persons with authority over the care, functioning or management of the common household.
The first, third, fourth and fifth elements provide no meaningful standard by which to distinguish a "family” — traditional or otherwise — from a nonfamily.
The second element, a common domestic bond, which respondents interpret to mean a "unitary force or tie shared by all members of the group and centered around the home”, is unconstitutionally vague in that it provides no objective criteria as to what constitutes such a bond, and is inherently circular. The term "domestic” is defined by Webster’s Ninth New Collegiate Dictionary (1990) by reference to the term "family”.[2]
*1005 The sixth element, a head of household, is also vague. If construed to mean one or more persons with overriding control of the household, it is underinclusive in excluding a variety of traditional families in which adults reside together with coequal authority such as families comprised of married couples without children and adult siblings.
If construed to allow equal authority amongst the adult members of a household, the head of household requirement would appear to be important only in cases where there are minors, incompetents or other persons whose relationships are legally subordinate to an adult member of the household. Cases in point are the group homes in City of White Plains (supra), Group House (supra), and Crane Neck (supra).
An absolute requirement of a central authority would elevate what is simply a relevant factor in determining the existence of a surrogate family to talismanic status to the exclusion of other relevant indicia of a family. This is precisely the type of analysis cautioned against in Group House (supra, at 274). The proper standard is whether in theory, size, appearance and structure a home is set up to emulate the living arrangements of a family (see generally, Annotation, What Constitutes a "Family ” within Meaning of Zoning Regulation or Restrictive Covenant, 71 ALR3d 693). Like the definition of "boarding house”, the amended definition of "family” fails the reasonable relationship test.
IV
Finally, the amended definition of family is unconstitutional as applied to the proposed use.[3] Petitioner’s project is for elderly persons who can live independently, but wish the benefit of shared living, including companionship and sharing of housing expenses. The living arrangements are intended to be permanent, not transient, and to create a stable surrogate family. To foster a family atmosphere, each unit is designed with a common kitchen, living room and dining area, and rent is paid by each unit as a whole instead of being collected from individuals.
*1006 The proposed facility is not intended to be an institution such as a retirement home in which residents are supervised and removed from the control of the affairs of the household. There are no on-site social services counselors or health care providers. The residents are supported only to the extent that petitioner will contract with a not-for-profit corporation to maintain the house and provide a counselor who will meet with the residents to assist them in obtaining all appropriate entitlements and facilitating discussions as to the needs of the group.
The type of congregate housing described bears the generic character of family unit, and should be recognized as a family equivalent (cf., City of Santa Barbara v Adamson, 164 Cal Rptr 539, 610 P2d 436, 438 [12 adults living together in 10-bedroom, 6-bathroom house, sharing expenses, rotating chores, eating evening meals together, and providing each other with emotional support and stability held to constitute a family equivalent], and Township of Washington v Central Bergen Community Mental Health Center, 156 NJ Super 388, 383 A2d 1194, 1209 [five unrelated women maintaining permanent household, jointly performing tasks such as cooking and cleaning, assisted by part-time social worker held a family equivalent]). The proposed group in no way detracts from the family values that residential zoning seeks to protect. To the contrary, it may actually support and further those values more effectively than certain traditional families (cf., Group House v Board of Zoning & Appeals, 45 NY2d, supra, at 273).
Accordingly, that part of the petition which seeks declaratory relief is granted to the extent that the definitions of "boarding house” and "family” in section 267-2 of the City of Mt. Vernon Zoning Ordinance are declared to be unconstitutional for violation of the Due Process Clause of the State Constitution. Petitioner is entitled to construct a two-family house as a matter of right. That part of the petition which seeks to annul the denial of area variances is granted upon respondents’ concession of petitioner’s right to such variances and the matter is remanded to the Zoning Board of Appeals solely for the purpose of imposing reasonable conditions on such variances as to the Board may appear appropriate. That part of the petition which seeks damages and attorney’s fees pursuant to 42 USC § 1983 is severed to be proceeded upon in a separate plenary action.

. The original definition was amended by respondents after the commencement of this litigation in apparent recognition of the precedent discussed in this decision declaring such a definition unlawful.

. The definition at bar is distinguished from that considered in Penobscot Area Hous. Dev. Corp. v City of Brewer (434 A2d 14 [Sup Ct, Me 1981]) cited by respondents. In that case, the reference to a "domestic bond” was clarified by other descriptive criteria in the definition.

. The court declines to remand this matter to respondents for the purpose of determining whether the proposed use would constitute a family equivalent as suggested by respondents in the event the court determined the use was not a boarding house. Respondents have made patently clear in their memorandum that they do not consider the Genesis project to be a family equivalent. A remand would merely provide an opportunity to further delay petitioner from proceeding.