# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00007-COA

**BRYAN SALIBA AND DENNIS PIERCE**                                            **APPELLANTS**

**v.**

**CITY OF HATTIESBURG**                                                                        **APPELLEE**

DATE OF JUDGMENT:                    11/28/2023
TRIAL JUDGE:                               HON. ROBERT B. HELFRICH
COURT FROM WHICH APPEALED:   FORREST COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:      SAMUEL STEVEN McHARD
                                              CHARLES HUNTER SALAMONE
                                              BRANDI DENTON GATEWOOD
                                              PAUL MANION ANDERSON
ATTORNEYS FOR APPELLEE:          R. LANE DOSSETT
                                              L. CLARK HICKS JR.
NATURE OF THE CASE:                   CIVIL - CONTRACT
DISPOSITION:                              AFFIRMED - 10/28/2025
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Appellants Bryan Saliba and Dennis Pierce own a commercial property (the "Westover" property) in Hattiesburg. In 2005, during construction of a hotel on adjacent property, the sewer line servicing the Westover property was damaged. After a consultation with the city engineer, Saliba and Pierce agreed for the City of Hattiesburg to install a temporary holding tank serviced by the City, with a plan to eventually reconnect the line. However, the sewer connection was not restored for nearly nine years. In 2013, while the property was still relying on the holding tank, Saliba and Pierce filed suit against the City of Hattiesburg, alleging physical damage to the parking lot from the heavy city trucks servicing

the tank and alleging economic damages to the value of the property. Within several months of the filing of the complaint, the City restored a sewer connection to the property. The circuit court granted the City's motion for summary judgment, rejecting Saliba and Pierce's contract-based claims and claim of inverse condemnation. Agreeing with the judgment of the circuit court, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     According to the depositions taken in advance of the summary judgment proceedings, Saliba and Pierce acquired the Westover land in 1991 and constructed a commercial rental property. When improving the property, they ran the sewer line diagonally across the property to connect to a sewer main. Saliba and Pierce eventually sold part of the Westover land for a hotel development. The sold parcel included the portion of the sewer line connecting to the main. When initial grading work for the hotel project began in 2005, construction equipment damaged the sewer line. It became apparent that the line would not be functional for the duration of the construction. City engineer Bennie Sellers came to the site and talked in person with Bryan Saliba. Sellers proposed that the City install and service a temporary holding tank for the Westover property, with plans for the sewer connection to be eventually restored.[1] According to Saliba's memory of the conversation, the reconnection

---

[1] According to Sellers' deposition, holding tanks are a common "best practice" used temporarily at construction sites prior to a building's connection to the main wastewater management system. As distinguished from septic tanks, which discharge the wastewater and have a more complex permitting system, holding tanks do not discharge the wastewater and are instead pumped. Sellers indicated that during a particularly busy period of development, the City had approximately twenty-five to thirty holding tanks used for periods

2

would operate by "piggyback[ing]" onto the sewer line for the hotel, which would require the reconnection to be done before the concrete for the hotel parking lot was poured. According to Sellers' deposition, the original placement of the sewer line had not been ideal, and the plan to reconnect the line involved running an additional sewer line along the adjoining city road and then connecting to the Westover property at a more practical point.[2]

¶3.     Saliba and Pierce agreed to the installation of the holding tank, which was installed in August 2005.[3] The hotel project was completed without the Westover property sewer line being reconnected to a main. When Saliba became aware that the sewer connection had not been restored, he reached out to city officials asking for updates on the restoration of the connection. These conversations continued for several years. According to the depositions, various concerns delayed the project, including the City's need to obtain bond financing for expanded sewer development in the area.

¶4.     Saliba and Pierce instigated this lawsuit in August 2013. The City completed a new sewer connection for the property in January 2014. Saliba and Pierce received the following letter from the City at the completion of the project:

     **Re:    Saliba v. City of Hattiesburg – 126 Westover Drive (Plaza Drive**

---

of months at a time.

     [2] According to Sellers, this plan was consistent with ongoing planned phased development of the area.

     [3] Saliba and Pierce characterize this agreement as them doing a favor for the City given the economic benefit brought by the hotel to the City. The City characterizes it as a courtesy emergency response by the City for Saliba and Pierce's benefit.

**Sewer Project)**

Dear Attorney McHard:

Please be advised that Mayor Dupree has requested that I provide you with an update regarding the sewer project that affected your clients, Bryan Saliba and Dennis Pierce, at 126 Westover Drive, Hattiesburg, MS 39402. Matthew Boutwell, Director of Water and Sewer for the City of Hattiesburg, met with me on the morning of Friday, January 24 to inform me that the sewer project affecting 126 Westover Drive has been completed.

It is my understanding that the contractor has finished the project and has removed the temporary holding tank that was placed by the City. Further, the site restoration should have been completed last week if it was not prevented by the weather. If the final inspection has not occurred then it should be completed shortly by Shows, Dearman and Waits.

The City of Hattiesburg appreciates the cooperation of your clients and their patience in assisting the City in its continuing effort to keep our city one of America's most livable small cities.

Sincerely,

Charles F. Lawrence, Jr.

¶5.     Saliba and Pierce continued with the lawsuit, seeking recovery for alleged damage to the Westover property's driveway and parking lot, as well as damages related to a decreased economic value of the property.[4] The City filed a motion for summary judgment, arguing that Saliba and Pierce's claims were barred by the relevant statutes of limitations, that the city

---

[4] They argued that the property was more difficult to rent because it was serviced by a holding tank, rather than a sewer line, and that sewage backed up on occasion into the building. In his deposition, Saliba was unable to represent that any tenant refused to lease the building specifically because it was serviced by a holding tank. Saliba intended to offer himself as a real estate expert at trial to testify that the building decreased in value due to the holding tank. However, the record does not indicate that they attempted to sell the building during the time period it lacked a sewer connection.

4

engineer did not have the authority to enter into a contract on behalf of the City, and that Saliba and Pierce did not have a valid inverse condemnation claim. Saliba and Pierce filed a partial motion for summary judgment, arguing that the City violated per se the city ordinance entitling properties to a sewer connection if certain conditions are met. The circuit court denied Saliba and Pierce's motion for partial summary judgment and granted the City's motion for summary judgment, agreeing with the City that Saliba and Pierce's claims were both time-barred and non-viable. Saliba and Pierce now appeal.

**STANDARD OF REVIEW**

¶6.     A circuit court's grant of summary judgment is reviewed de novo. *Miss. Hub LLC v. Baldwin*, 358 So. 3d 305, 307 (¶6) (Miss. 2023). The circuit court's grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Kinney v. S. Miss. Plan. & Dev. Dist. Inc.*, 202 So. 3d 187, 192 (¶13) (Miss. 2016)); *accord* M.R.C.P. 56(c).

**DISCUSSION**

I.     **Whether the City entered into a contract with Saliba and Pierce through the representations of the city engineer.**

¶7.     Saliba and Pierce argue that Saliba's on-site conversation with Bennie Sellers operated to create a contract with the City, creating a contractual obligation for the City to promptly reconnect the sewer line access to the Westover property at the completion of the

hotel construction project. Our law is clear that city representatives do not have the power to contract on behalf of the City and that plaintiffs are imputed with this knowledge. *Groundworx LLC v. Blanton*, 234 So. 3d 363, 370 (¶32) (Miss. 2017). "The law that [c]ity representatives 'can contract and render the [City] liable only by a valid order duly entered upon its minutes' is so clear and consistent that 'all persons dealing with [the City] . . . are chargeable with knowledge of this law[.]" *Id.* (quoting *Colle Towing Co. v. Harrison County*, 213 Miss. 442, 57 So. 2d 171, 172 (1952)).

¶8.     In *Groundworx*, Groundworx contracted with the City of Hattiesburg to "design, build, construct, own, operate and maintain the [wastewater] System for the purpose of collecting, treating, storing, transporting, and disposal of the City's Wastewater . . . ." *Id.* at 366 (¶6). However, the contract was conditioned on Groundworx obtaining $147 million in financing. *Id.* at (¶7). The contract provided that if "Groundworx has not closed its financing" by a certain date, "either party shall have the right to terminate this Agreement by written notice to the other . . . ." *Id.* City representatives were present at a meeting between Groundworx and a potential financier. *Id.* at (¶8). At the meeting, "the City officials talked about raising sewer rates to show 'the City's commitment to bond financing the project.'" *Id.* at (¶9). However, the mayor subsequently vetoed a resolution to raise the rates. *Id.* at (¶10). When the City canceled the contract, Groundworx argued that after the initial contract was formed, "the City entered an 'express agreement' to raise sewer rates so Groundworx could obtain financing." *Id.* at 367 (¶17).

6

¶9.     The Mississippi Supreme Court rejected this argument, holding that "the only way the City could enter a binding contract to raise sewer rates is 'by a valid order duly entered upon its minutes.'" *Id.* at 370 (¶31) (quoting *Colle Towing Co.*, 57 So. 2d at 172). The Court further rejected Groundworx's estoppel argument, stating that the promise by city representatives "cannot reasonably be relied upon or enforced by Groundworx unless it is on the City's minutes. Thus, Groundworx has no estoppel claim." *Id.*

¶10.    To support their estoppel argument, Saliba and Pierce point to *Mayor & Bd. of Aldermen, City of Clinton v. Welch*, 888 So. 2d 416 (Miss. 2004). In *Welch*, a family sought and was granted approval to build a tree house in their front yard by a city zoning inspector. *Id.* at 418 (¶4). Several years after this initial approval, and after the family spent $5,000 building the structure, the City found that the treehouse was in violation of the zoning ordinance. *Id.* at (¶5). On appeal, the Mississippi Supreme Court held that in light of the family's reliance on the zoning official's representations, the City was estopped from enforcing the ordinance against the family.

¶11.    *Welch* supports the general principle that in certain circumstances, estoppel can be invoked against a municipality. *Id.* at 424 (¶43) ("Cities are not immune from the doctrine of equitable estoppel."). However, *Welch* does not address the question of contract formation with a city. Saliba and Pierce suggest that the ruptured sewer presented an emergency situation warranting an exception to the long-standing "minutes rule"—the rule that a contract must be entered on the minutes to be enforceable. *See Colle Towing Co.*, 57 So. 2d

7

at 172. However, our courts have never recognized an emergency-based estoppel exception to the requirement that contracts with a municipality must be spread on the minutes for reliance on the promise of a city representative to be reasonable. Given the absence of a contract with the City, the circuit court was correct to grant the City's motion for summary judgment on Saliba and Pierce's contract-based claims.[5]

## II. Whether the City committed a public taking sufficient to support a claim of inverse condemnation.

¶12. Saliba and Pierce also brought a claim against the City for inverse condemnation of their property. The circuit court held that Saliba and Pierce's inverse condemnation claim failed because there was no taking for public use, citing *Sturdivant v. Coahoma County*, 303 So. 3d 1124, 1129 (¶18) (Miss. Ct. App. 2020).[6] Under the Mississippi Constitution, "[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law[.]"

---

[5] The City also argues that the contract claims are barred by the applicable three-year statute of limitations. Saliba and Pierce rebut that the *Horton* waiver doctrine applies to preclude the City from relying on the affirmative statute of limitations defense. *See MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 179 (¶39) (Miss. 2006). They also argue that estoppel operates to prelude reliance on the statute of limitations. *See Ezell v. Williams*, 724 So. 2d 396, 398 (¶7) (Miss. 1998). Given that we find no contract existed, we do not find it necessary to analyze these arguments.

[6] The circuit court also held that the inverse condemnation claim was barred by the general three-year statute of limitations. *See City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 558 (¶1) (Miss. 2017). Similar to the contract claim, Saliba and Pierce argue that the *Horton* waiver doctrine precludes the City's ability to rely on that affirmative defense. Because we ultimately conclude there was no taking, we do not find it necessary to address the statute of limitations or *Horton* waiver issue.

Miss. Const. art. 3, § 17 (1890). Inverse condemnation is "an action or eminent domain proceeding initiated by the property owner, rather than the condemnor[.]" *State v. Murphy*, 202 So. 3d 1243, 1251 (¶15) (Miss. 2016) (quoting *Jackson Mun. Airport Auth. v. Wright*, 232 So. 2d 709, 713 (¶15) (Miss. 1970)). "An inverse condemnation claim involves (1) a property owner seeking (2) compensation for (3) a private property taken for public use (4) without proper condemnation proceedings." *Sturdivant*, 303 So. 3d at 1129 (¶18). "Inverse condemnation is appropriate only when private property is taken or damaged in respect to public use or use for the public benefit." *Id.* (quoting *Kelley LLC v. Corinth Pub. Utils. Com'n*, 200 So. 3d 1107, 1118 (¶30) (Miss. Ct. App. 2016)).

¶13.    In *Sturdivant*, the plaintiff argued that Coahoma County committed a taking for public use when it damaged waterlines to her property during a road-widening project. *Id.* at 1128 (¶10). We held that "Sturdivant's access to water for her property does not benefit the public. Further[,] Coahoma County's damage to the water line was not done for any public good." *Id.* at 1131 (¶23).[7] Here, the damage to the sewer line servicing the Westover property was done by third-party non-municipal actors on the private property that Saliba and Pierce sold for the hotel development. Similar to the plaintiff in *Sturdivant*, Saliba and Pierce's access to water for their property was not for a public use. Therefore, the circuit court was correct to hold that they did not have a viable claim for inverse condemnation.

---

[7] The opinion suggests that Sturdivant might have had a viable negligence claim under the Mississippi Tort Claims Act had that claim been timely filed, which it was not. *Sturdivant*, 303 So. 3d at 1131 (¶24).

### III. Saliba and Pierce's remaining arguments are either barred or without merit.

¶14.    Saliba and Pierce brought a continuing trespass claim against the City. However, they voluntarily abandoned this claim during the proceedings, and the circuit court dismissed this claim with prejudice by agreement of the parties.[8] The circuit court nevertheless addressed the merits of this claim in its final judgment, and the parties addressed it in their briefs. Because this issue was dismissed with prejudice by agreement of the parties during the proceedings before the circuit court, it is not properly before us, and we decline to address it on appeal.

¶15.    We also find that the circuit court did not err in denying Saliba and Pierce's motion for partial summary judgment. In addition to Saliba and Pierce's claims being barred as a matter of law as discussed above, a review of the record demonstrates that significant material facts were in dispute, including whether the Saliba and Pierce had an appropriate easement per the ordinance requirement, whether the damages to the parking lot were pre-existing or caused by city vehicles, and whether the economic use of the Westover property was diminished.

### CONCLUSION

¶16.    Saliba and Pierce did not have a contract with the City of Hattiesburg. Promissory

---

[8] Tort actions against a governmental entity are subject to a one-year statute of limitations under the Mississippi Tort Claims Act. *See* Miss. Code Ann. § 11-46-11 (Rev. 2019); *see also Hood v. A&A Excavating Contractors Inc.*, 338 So. 3d 145, 151 (¶15) (Miss. Ct. App. 2022) (holding a "continuing" tort action is non-viable when no evidence presented of "repeated action" by alleged tortfeasor).

estoppel does not operate as an exception to the minutes rule. Saliba and Pierce do not have a viable inverse condemnation claim because their property was not taken for a public use or benefit. The circuit court properly granted summary judgment to the City of Hattiesburg and properly denied Saliba and Pierce's partial motion for summary judgment. Therefore, we affirm.

¶17.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**