IRVING, P.J.,
 

 for the Court.
 

 ¶ 1. On October 7, 2003, the Rankin County Chancery Court granted Kim Yates and Thomas Yates a divorce on the ground of irreconcilable differences. The chancery court granted full custody of the couple’s minor child, R.A.,
 
 [1]
 
 to Kim. Thomas was granted supervised visitation, which was to take place at the home of his mother, Annie Brown, every other weekend. Annie was to be in R.A.’s presence at all times during visitation.
 

 ¶ 2. On June 26, 2006, Thomas filed a motion for a modification of the visitation
 
 *759
 
 schedule, seeking unsupervised, standard visitation. On July 20, 2006, Kim filed a motion to suspend visitation, alleging that Thomas had sexually abused R.A. The chancery court entered a temporary order suspending Thomas’s visitation with R.A. On December 17, 2007, Thomas agreed to have his parental rights terminated.
 

 ¶ 3. On October 6, 2008, Annie filed a petition for grandparent visitation. Kim filed her answer and defenses and challenged the constitutionality of the grandparent-visitation statute. The ' chancery court held that the statute was constitutional, but denied visitation. Feeling aggrieved, Annie appeals and argues that the chancery court erred in denying visitation. Additionally, Annie argues that because Kim did not file a cross-appeal on the issue of the grandparent-visitation statute’s constitutionality, she is procedurally barred from raising the issue before this Court.
 

 ¶ 4. Because the chancery court failed to grant grandparent visitation despite finding that the
 
 Martin
 

 [2]
 

 factors favored visitation and that visitation was in R.A.’s best interest, we reverse the judgment of the chancery court and remand this case for an award of limited visitation consistent with the chancery court’s Martin-factor analysis and R.A.’s best interest.
 

 FACTS
 

 ¶ 5. Following the termination of Thomas’s parental rights, Kim refused to allow R.A. to visit Annie. Kim testified that Annie had failed to comply with the terms of the supervised visitation, which required Annie to remain in R.A.’s presence at all times during visitation. Kim blamed Annie for the alleged sexual abuse suffered by R.A., contending that the abuse would not have occurred but for Annie’s failure to comply fully with the chancery court’s order regarding supervised visitation.
 

 ¶ 6. Annie admitted in her testimony that visitation did not always occur in her home. Furthermore, she admitted that on one occasion she had allowed R.A. to ride home alone with Thomas. However, Annie testified that she had never read the divorce decree and that she was not made aware of the terms of the supervised visitation. Annie testified that she did not believe that in supervising visitation, she was to guard R.A. from Thomas. Instead, Annie believed that she was asked to supervise R.A.’s visitation with Thomas because he suffered from depression and had little experience caring for young children.
 
 [3]
 

 ¶ 7. In 2005, Kim made the initial allegations of sexual abuse against Thomas. Kim testified that R.A. had returned from supervised visitation with bruises on her body. Additionally, R.A. complained of pain on her “bottom.” Kim took R.A. to the Mississippi Child Advocacy Center, where R.A. was interviewed regarding the allegations of abuse. R.A. initially stated that Thomas had touched her breasts and vaginal area, but at the conclusion of the interview, she denied that Thomas had ever touched her inappropriately.
 

 ¶ 8. Kim took R.A. to the Child Advocacy Center once more in 2006. According to Kim, R.A. had returned from supervised visitation with Thomas again complaining of pain on her “bottom.” The center conducted a second interview with R.A., where she again denied that her father had touched her inappropriately. The interviewer noted in her report that there was no conclusive evidence of abuse.
 

 ¶ 9. The chancery court appointed Dr. Angela Herzog, a psychologist, to deter
 
 *760
 
 mine whether Annie was unfit for visitation and assess whether visitation would adversely impact R.A. Dr. Herzog testified that R.A. expressed a desire to see Annie during Dr. Herzog’s initial interview with R.A. However, when Dr. Herzog approached Kim about allowing R.A. to see Annie, Kim became emotionally distraught. Dr. Herzog further testified that Annie was neither neglectful nor unfit for visitation with R.A., but she admitted that visitation with Annie could be traumatic for R.A. However, Dr. Herzog explained that any trauma would likely stem from Kim’s negative reaction to the visitation — not the renewed relationship with Annie.
 

 ¶ 10. Angela Marshall, the guardian ad litem (GAL), also testified that Kim’s negative reaction to an award of grandparent visitation could adversely impact R.A. Marshall further testified that her recommendation to deny Annie’s request for visitation was based on Kim’s promise that “all hell would break loose” if visitation were granted.
 

 ¶ 11. In its bench opinion, the chancery court adopted the GAL’s analysis of the
 
 Martin
 
 factors,
 
 [4]
 
 with the exception of the GAL’s finding that R.A. lacked an emotional tie to Annie. The GAL found that visitation would cause disruption in R.A.’s life; however, that finding was largely based on Kim’s negative feelings regarding grandparent visitation. The GAL determined that Annie’s home was suitable for visitation, but she expressed concern regarding Annie’s ability to supervise R.A. given her admission that she had left R.A. alone with Thomas on at least one occasion. The GAL found that R.A. was at an age where “she could enjoy meaningful time with her grandmother” and that there was nothing about Annie’s age and physical and mental health that weighed against visitation!
 

 ¶ 12. The chancery court disagreed with the GAL’s finding that R.A. lacked an emotional connection with Annie and found that, based on the testimonies of Annie and Dr. Herzog, such a connection existed. With regard to Annie’s moral fitness, the GAL noted that Annie testified at the hearing on Kim’s motion to suspend visitation that she had never left R.A. alone with Thomas during supervised visitation, but Annie later admitted that she had failed to provide adequate supervision of R.A. on at least one occasion. However, other than the discrepancy in Annie’s testimony, the GAL found no other evidence that Annie was morally unfit. The GAL noted that Annie did not live far from R.A. and that Annie’s work schedule was flexible and
 
 *761
 
 would not interfere with visitation. Finally, based on the GAL’s interview of Annie, she found nothing to suggest that Annie would undermine Kim’s general discipline of R.A. or interfere with Kim’s decisions regarding R.A.’s upbringing.
 

 ¶ 13. The chancery court found that the
 
 Martin
 
 factors favored visitation with Annie and determined that grandparent visitation was in R.A.’s best interest. However, the chancery court denied visitation because Annie had failed to present “compelling circumstances” that would justify judicial interference with Kim’s parental rights.
 

 ¶ 14. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS OF THE ISSUES
 

 ¶ 15. Our review of domestic-relations cases is limited to the “substantial evidence/manifest error rule.”
 
 R.K. v. J.K.,
 
 946 So.2d 764, 772 (¶ 17) (Miss.2007) (citing
 
 Mizell v. Mizell,
 
 708 So.2d 55, 59 (¶ 12) (Miss.1998)). As such, an appellate court “will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied.”
 
 Id.
 
 (citing
 
 Mizell,
 
 708 So.2d at 59 (¶ 13)).
 

 1. Denial of Grandparent Visitation
 

 ¶ 16. Annie argues that the chancery court erred when it denied her visitation, despite finding that the
 
 Martin
 
 factors favored visitation and that visitation would be in R.A.’s best interest. Additionally, Annie contends that the chancery court erroneously required that she prove “compelling circumstances” before it would order visitation against Kim’s wishes.
 

 1117. The Mississippi Supreme Court has held that “[pjarents with custody have a paramount right to control the environment, physical, social, and emotional, to which their children are exposed.”
 
 Stacy v. Ross,
 
 798 So.2d 1275, 1280 (¶ 23) (Miss.2001) (citations omitted). The
 
 Stacy
 
 court further held that “[interference with that right based upon anything less than compelling circumstances is not the intent of the visitation statute.”
 
 Id.
 

 ¶ 18. In
 
 Stacy,
 
 Kenneth and Sue Ross brought an action for grandparent visitation after their grandson’s parents refused to allow visitation.
 
 [5]
 

 Id.
 
 at 1276 (¶ 2). The
 
 *762
 
 chancery court granted unsupervised, overnight visitation for one Saturday a month, against the parents’ wishes.
 
 Id.
 
 at 1281-82 (¶¶ 25-26). Our supreme court reversed the chancery court’s decision, finding that the chancellor had not given appropriate deference to the parents’ wishes.
 
 Id.
 
 at 1280-81 (¶ 24). The court noted that the chancellor had “never made an express finding that visitation was in [the child’s] best interest....”
 
 Id.
 
 at 1282 (¶ 27). Additionally, the court-appointed psychiatrist opined that visitation was not in the child’s best interest.
 
 Id.
 
 at 1281 n. 3. Finally, the court noted that the child’s parents had “been willing to accord some visitation.”
 
 Id.
 
 at 1282 (¶ 28).
 

 ¶ 19. We find the circumstances in
 
 Stacy
 
 distinguishable from this case. First and foremost, the chancery court in
 
 Stacy
 
 made no express finding regarding the child’s best interest. Here, the chancery court found that, based on its analysis of the
 
 Martin
 
 factors, visitation with Annie was in R.A.’s best interest. Second, the parents in
 
 Stacy
 
 were willing to allow some visitation with their child, and they had no intention of permanently denying visitation. Kim has wholly denied Annie visitation with R.A.
 

 ¶20. Furthermore, we find that the chancery court misapplied the compelling-circumstances standard articulated in
 
 Stacy.
 
 The chancery court reasoned that because Annie had not alleged that Kim was an unfit parent, compelling circumstances did not exist, therefore, visitation could not be awarded against Kim’s wishes. Applying
 
 Stacy
 
 in this manner frustrates the purpose of the grandparent-visitation statute by allowing parental veto of visitation in all circumstances — except where the custodial parents are unfit. While the chancery court was required to give Kim’s decision regarding grandparent visitation special weight, it was not required to defer automatically to Kim’s decision as a fit custodial parent, especially where the chancellor found that visitation was in R.A.’s best interest. Accordingly, we reverse the chancery court’s denial of grandparent visitation and remand this case for an award of reasonable visitation consistent with the chancery court’s Martin-factor analysis and R.A.’s best interest.
 

 2. Constitutional Challenge
 

 ¶ 21. In her brief, Kim challenges the constitutionality of the Grandparents’ Visitation Rights Act, specifically sections 93-16-3(1) and 93-16-5.
 
 [6]
 
 Kim previously argued that the grandparents’ visitation statute was unconstitutional in her answers and defenses to Annie’s petition requesting visitation; however, Kim did not file a cross-appeal on the issue of constitutionality. Annie asserts that Kim’s failure to file a cross-appeal acts as a procedural bar.
 

 ¶22. This Court has previously held that “[i]n order for the appellee to gain reversal of any part of the decision of a trial court about which the appellant brings no complaint, the appellee is required to file a cross-appeal.”
 
 Delta Chem. & Petroleum, Inc. v. Citizens Bank of Byhalia, Miss.,
 
 790 So.2d 862, 878 (¶ 52) (Miss.Ct.App.2001) (citing
 
 Brock v.
 
 Han
 
 *763
 

 kins Lumber Co.,
 
 786 So.2d 1064, 1068 (¶ 19) (Miss.Ct.App.2000)). Our supreme court has also held that an appellee must file a cross-appeal when he “seek[s] to alter or reverse the judgment below.”
 
 Dunn v. Dunn,
 
 858 So.2d 1150, 1152 (¶ 8) (Miss.2008).
 

 ¶ 23. Because Kim seeks to reverse the chancery court’s finding that sections 93-16-3(1) and 96-16-5 are constitutional, and Annie did not raise the issue on direct appeal, Kim was required to file a cross-appeal. Kim failed to do so; therefore, the issue is not properly before this Court and will not be considered.
 

 ¶ 24. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.
 

 [1]
 

 . To protect the privacy of the minor child and her family, the names of the child and her relatives have been changed.
 

 [2]
 

 .
 
 Martin v. Coop,
 
 693 So.2d 912, 916 (Miss.1997).
 

 [3]
 

 . Thomas’s supervised visitation with R.A. began when R.A. was two years old.
 

 [4]
 

 .The
 
 Martin
 
 factors are as follows:
 

 1. The amount of disruption that extensive visitation will have on the child’s life. This includes disruption of school activities, summer activities, as well as any disruption that might take place between the natural parent and the child as a result of the child being away from home for extensive lengths of time.
 

 2. The suitability of the grandparents' home with respect to the amount of supervision received by the child.
 

 3. The age of the child.
 

 4. The age, and physical and mental health of the grandparents.
 

 5. The emotional ties between the grandparents and the grandchild.
 

 6. The moral fitness of the grandparents.
 

 7. The distance of the grandparents' home from tíre child's home.
 

 8. Any undermining of the parent's general discipline of the child.
 

 9. Employment of the grandparents and the responsibilities associated with that employment.
 

 10. The willingness of the grandparents to accept that the rearing of the child is the responsibility of the parent, and that the parent’s manner of child rearing is not to be interfered with by the grandparents.
 

 Martin,
 
 693 So.2d at 916.
 

 [5]
 

 . We note that the grandparents in
 
 Stacy
 
 sought visitation under Mississippi Code Annotated section 93-16-3(2) (Supp.2010), which provides that:
 

 Any grandparent who is not authorized to petition for visitation rights pursuant to subsection (1) of this section may petition the chancery court and seek visitation rights with his or her grandchild, and the court may grant visitation rights to the grandparent, provided the court finds:
 

 (a) That the grandparent of the child had established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child; and
 

 (b) That visitation rights of the grandparent with the child would be in the best interest! 1 of the child.
 

 Annie seeks visitation pursuant to section 93-16-3(1) which provides that:
 

 Whenever a court of this state enters a decree or order awarding custody of a minor child to one (1) of the parents of the child or terminating the parental rights of one (1) of the parents of a minor child, or whenever one (1) of the parents of a minor child dies, either parent of the child’s parents may petition the court in which the decree or order was rendered or, in the case of the death of a parent, petition the chancery court in the county in which the child resides, and seek visitation rights with the child.
 

 Despite proceeding under different sections of the Mississippi Grandparents' Visitation Rights Act, we note that “special weight” must be given to the custodial parents’ wishes under both sections given the United States Supreme Court’s holding in
 
 Troxel v. Granville,
 
 530 U.S. 57, 69-70, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
 

 [6]
 

 . Section 93-16-5 (Rev.2004) provides:
 

 All persons required to be made parties in child custody proceedings or proceedings for the termination of parental rights shall be made parties to any proceeding in which a grandparent of a minor child or children seeks to obtain visitation rights with such minor child or children; and the court may, in its discretion, if it finds that such visitation rights would be in the best interest of the child, grant to a grandparent reasonable visitation rights with the child. Whenever visitation rights are granted to a grandparent, the court may issue such orders as shall be necessary to enforce such rights and may modify or terminate such visitation rights for cause at any time.